### SOCIETY FOR SAVINGS *v.* COITE.

1. A statute of a State requiring savings societies, authorized to receive deposits but without authority to issue bills, and having no capital stock, to pay annually into the State treasury a sum equal to three-fourths of one per cent. on the total amount of their deposits on a given day, imposes a franchise tax, not a tax on property.
2. Such a tax is valid.
3. Consequently the fact that a savings society so taxed has invested a part of its deposits in securities of the United States declared by Congress, in the act which authorized their issue, to be exempt from taxation by State authority, does not exempt the society from taxation to the extent of deposits so invested.

ERROR to the Supreme Court of Connecticut; the case being thus:

The legislature of Connecticut, in 1863, enacted that the several *savings banks* in the State should make annual return to the comptroller of public accounts, " *of the total amounts of all deposits* " in them respectively, on the first day of July in each successive year; and that each should annually pay to the treasurer of the State, " a sum equal to three-fourths of one per cent. *on the total amount of deposits* " in such savings bank, on the days aforesaid. The statute declared that this tax should be in lieu of all other taxes upon savings banks or their deposit.

With this statute in existence, the " Society for Savings "—one of the savings banks of Connecticut, and as such empowered by its charter to receive deposits of money, and improve them for the benefit of its depositors, but having no capital stock or stockholders—had on the 1st July, 1863, $500,161 of its deposits invested in securities of the United States, which, by the act of Congress authorizing their

issue, were declared to be exempt from taxation by State authority, " whether held by individuals, *corporations*, or associations."* Upon the amount of their deposits thus invested, the society refused to pay the sum equal to the prescribed percentage.

On a suit brought by Coite, treasurer of the State, for the purpose of recovering the tax thus withheld, the Supreme Court of Connecticut decided that the tax in question was not a tax on property, but on the corporation as such, and rendered judgment accordingly for the plaintiff.†

The correctness of the judgment was the point now here on error.

*Mr. Chamberlin, for the plaintiff in error :*

The question is, whether the statute of Connecticut, as sought to be enforced by the State treasurer, imposed a tax upon *securities* of the United States? If so, it is confessedly illegal.

The *language* lays a tax based upon property. It is even more directly upon the "property," than the statute of New York which received construction in the " *Bank Tax Case.*"‡ That provided for a tax " *upon a valuation equal* to the amount of capital stock," &c.; this for a tax " *on the total amount*" of deposits, &c. The first is on a *valuation equal to the amount ;* the second *on the amount,* &c. That case goes far to conclude this. In that case the court says, that in making up a tax under the law, " the commissioners need only look into the condition of the bank in order to ascertain *the amount of the capital stock paid in or secured to be paid in,* and this sum in the aggregate *will constitute the basis,*" &c. The New York legislature probably meant to impose a tax which should be construed as a tax upon franchise and privilege irrespective of property; but the court inquire, what is *the basis* of the tax? In New York the *basis* is found to be the amount of " capital paid in or secured," &c.; in Connecticut it is equally

---

* 12 Stat. at Large, 346.

† Coite v. Savings Bank, 32 Connecticut, 173.

‡ 2 Wallace, 207.

clear that "the amount of deposits" is the basis. Deposits for all the purposes of this case sustain the same relation *to this institution* which capital sustains to a bank. Each represents money received by the corporation to be managed for the benefit of the owners; each is properly classed among the liabilities of the corporation; each constitutes the principal fund from which investments are made, and the difference consists in the fact that "capital" remains with the corporation, while deposits in this institution may be withdrawn.

Where is the difference between a tax upon property, and a tax upon a person measured by the amount of his property? In either case the property is the foundation and moving cause of the tax. If a person has no property he has no tax. If he has small or large possessions his tax is small or large in proportion. Suppose a person should invest the sum of $1000 in United States securities, and the legislature of the State should say to him in the form of a law, "Inasmuch as we cannot tax you for the money lent to the general government, you as an individual shall pay a sum equal to the tax on $1000, vested in taxable securities." Would such a law be valid? Certainly not. But why not? The law does not tax the sum lent; it imposes the tax upon the *individual.* But the intent is too obvious. It is in form a tax upon the individual, but in substance a tax upon the sum lent. And so in the case under consideration. It is the duty of courts to look through the shadow to the reality.*

The tax, if not upon property *as such*, is *measured by the extent of the property*—the amount of the deposits being the measure. A tax upon "faculty" or "franchise," estimating its value by the money it has secured, is the same thing in substance as taxing the money secured; and a tax upon the money secured—or *with reference to it as a basis*—is substantially the same thing as a tax upon the securities for which it has been exchanged. Such a tax cannot be laid while a portion of the property, the amount of which is so adopted

---

* Brown *v.* Maryland, 12 Wheaton, 419.

" as the standard of taxable liability," is so invested as, under the protecting power of a higher authority, to be exempt. The privilege of exemption from taxation of so much property as may have been lent to the United States, ought not to depend *upon the mode of estimating* the property of an individual or a corporation.

A tax unpaid upon a franchise of a corporation, the power and authority of which is limited to holding, managing and investing money entirely for the benefit of depositors, and which has no corporate property distinct from that which they so hold in special trust, which has no stockholders or members interested in its profits or who can receive dividends from its earnings, necessarily operates as an assessment on the property *of those for whose use* the franchise is exercised. The parties *for whose use* the franchise is exercised being distinct from the corporation and sustaining no other than a property relation to the corporation—it becomes in its *essence* and *operation* a direct tax upon " property," the burden falling and resting directly and only there.

Let each individual and corporation throughout the State be required to state the amount of *the cost* of the personal property owned by him on the first day of January in each year, and pay three-fourths of one per cent. on such amount, and you get a tax quite similar to the one in question.

*Messrs. Hubbard and McFarlane, contra:*

We assume—

1. That a State legislature may impose taxes on the exercise of a franchise created by itself.

2. That it may measure the tax by the measure of exercise.

3. That it may measure the exercise by an arbitrary standard, as a fixed sum, or by a more equitable standard, as the amount of money received in the exercise of the franchise, or even by the value on an appraisal of the earnings or property (including Federal stocks) owned by the possessor of the franchise.

Now the statute in this case does not impose a tax on the

property of the Savings Bank, but on the corporation as such; in other words, it imposes a tax or excise on the privilege or franchise of the corporation.

The standard fixed by the statute disregards all reference to actual assets, modes of investment, accumulations, losses, profits, or valuations. If the bank have earned by use or investment of its deposits a surplus, no matter how large, above the amount of its deposits, this surplus is not taxable. Its taxes do not increase. On the other hand, if such investment has been wholly lost or destroyed, the taxes would not be diminished. Thus it is seen that the law has no reference to a valuation of assets, but to the fixed arithmetical standard of "the total amount of all deposits." Now to say that the corporation is entitled to a reduction of taxes because some of its assets happen for the time being to be non-taxable, and that it is not entitled to a reduction when a portion of these assets become worthless or non-existing, is absurd.

The phraseology of the act is consistent with this view. The requirement is not that the banks shall pay a tax of one-half of one per cent. on their deposits, but " a sum equal to one-half of one per cent. on the total amount of deposits in such institution."

A tax of a similar character to this is imposed by a Connecticut statute of 1862, on agents of foreign insurance companies, who are required to pay to the treasurer of the State two per cent. on the gross amount of premiums and assessments annually received by them. What is *this* tax? Obviously an excise tax on a foreign corporation, through its agent, for the privilege of doing business. What is the extent of the tax? Precisely in proportion to the business done. Would it make any difference with the amount of the tax that the foreign corporation, or the agent, had invested the year's premiums and assessments in Federal securities? Clearly not! So in the case at bar, the tax is not imposed on the property of the savings bank, but on the corporation. The extent of the tax is measured in each year by the amount of its business, the extent to which it

exercises its franchise, or in other words, by "the total amount of its deposits."

The case of *Portland Bank* v. *Apthorp*,* which arose in the State of Massachusetts, in 1815, is akin to this. The Constitution of Massachusetts provides that the legislature "may impose and levy proportionate and reasonable assessments, rates, and taxes upon all the inhabitants of, and estates lying within, the commonwealth; and also to impose and levy reasonable duties and excises." With this provision in force, the State, in 1812, enacted that all its banks should pay, at times stated by the commonwealth, a tax of one-half of one per cent. on the amount of the original stock of said banks respectively actually paid in. The validity of the statute was called in question, as being repugnant to the constitutional provision for the taxation of property. The court held that the assessment was not a tax on the stock, but an excise duty on the franchise of the corporation, and as such warranted by the constitutional provision in respect to excise taxes.

But the recent case of *The Commonwealth* v. *Five Cents Saving Bank*† is in every respect parallel. That case was thus: Massachusetts, in 1862, enacted:

" That every savings bank incorporated under the laws of this commonwealth, shall pay [at times specified by the statute] to the treasurer of the commonwealth, a tax on account of its depositors, of one-half of one per cent. per annum on the amount of its deposits, to be assessed, one-half of said annual tax on the average amount of its deposits for the six months preceding the first day of May, and the other on the average amount of its deposits for the six months preceding the first day of November."

Payment of the tax under this statute was resisted on the same ground as it was resisted on in the former case. The court sustained the validity of the law for the same reasons as before. It says:

" It appears to us that the assessment imposed by the provi-

* 12 Massachusetts, 252                † 5 Allen, 431.

sions of the statute under consideration, must be regarded as an excise or duty on the privilege or franchise of the corporation, and not as a direct tax on money in its hands belonging to depositors. . . . . In the next place, the manner in which the amount of the assessment is to be ascertained clearly indicates that the tax is designed to be a corporate charge. It is not a tax levied on each deposit at a certain rate in proportion to its amount, but it is assessed on the amount of all the deposits in the bank, ascertained and fixed by the average sums which it has had in its hands during the six months preceding a specific day. It is the extent to which the corporation has exercised the franchise conferred on it by law, of receiving deposits during a certain period, that is made the basis on which to estimate the sum which is to be paid for the enjoyment of the privilege."

But more than all, these views have been declared anew in that same State in *Commonwealth* v. *Provident Institution for Savings*,* a case involving the issue now at bar.

The *Bank Tax Case,* so much relied on, has no application. There, this court had decided that an act of New York, passed in 1857, and laying a tax, did not include the Federal securities held by banks. Subsequently (A.D. 1863), the same State passed an act providing in terms for " a valuation." The law directed the mode of valuation. It was to be composed of two things. 1. The capital originally contributed. 2. The surplus on hand earned by that capital. In other words, the bank was not allowed to show that its capital was impaired. Accordingly this court, under the special circumstances of the case, on a question of construction of the act of 1863, in comparison with the act of 1857, and with full knowledge that the former act was passed for the purpose of avoiding the decision of this court, held that the act in question was intended to impose a tax on property, by a new and specified mode of valuation.

*Reply:*

1. When, under the authority given by the Federal Constitution to " borrow money on the credit of the United

---

* 12 Allen, 313.

States," Congress puts that credit into the market, and by express enactment, as part of the contract of borrowing, declares that the securities held by " corporations " shall be exempt from taxation by or under State authority; it exempts from taxation by or under that authority, the franchise or privilege which such corporations had of lending to the United States, upon the faith of such contract, and of the securities so to be issued.   The power to tax the franchise or privilege of lending or investing in a given case, retards, impedes, and burdens the power to borrow in that case.   The position of the other side is, that the States may tax against corporations existing under and in pursuance of their laws and enjoying their protection, the privilege or franchise of lending money to the United States.   If " the power to tax implies the power to destroy," is not this holding that the States may prohibit all persons, natural and artificial, existing under and enjoying the protection of their laws, from lending to the United States?

Suppose the tax in this case be not nominally a tax upon property—if it be a tax upon the power to *lend*, without the exercise of which the United States can not borrow—is it not necessarily a tax or burden upon "the power to borrow?"   Does it not come within the inhibition stated by this court in *Weston* v. *Charleston:** "the right to tax the contract to any extent when made, must operate upon the power to borrow before it is exercised, and have a sensible influence upon the contract."   Is not the contract made by Congress, that this plaintiff (a " corporation ") shall not be taxed on account of these securities, violated, if the amount it has invested in them is included in the " measure of taxable liability?"   Do not the opposite counsel then assume too much in assuming that over a tax imposed on a franchise, however the quantum of the tax may be measured, limited, or ascertained, this court has no control.

We say that whatever be the source from which the power to lend to the United States is derived, it is alike under the

* 2 Peters, 468–9.

protection of the paramount authority of the borrower, and is beyond the power of State nullification, either legislative or judicial.

2. Most if not all the positions set up and advocated by the defendant in error, were discussed on behalf of the Tax Commissioners, in *The Bank Tax Case.** It was then argued that the tax was *not on the property* of the bank, but on the *corporation specifically.* That the corporation was created by the State and ought to pay for the valuable franchise which it enjoyed. That the *purpose* of the act *was* to compel payment *therefor.* That the reference in the statute to "a valuation equal to the amount of their capital stock," &c., was only for the purpose of fixing the amount the corporation ought annually to pay for their *franchise.* That it had no regard to the actual capital *owned* by the bank, or to the securities, or to the value of the securities held by it. That the corporations being created by the State, and dependent upon the State for continued existence, could properly be compelled to aid in bearing the State burdens, as the price of their existence. But the court declared that the positions were not true.

3. The cases cited from the State courts of Massachusetts are not *authority* here. The case most relied on, the last of the three cited, is now here on error.†

Mr. Justice CLIFFORD delivered the opinion of the court.

Savings banks, and societies for savings, in the State of Connecticut are required by the law of the State to pay annually to the State treasurer for the use of the State a sum equal to three-fourths of one per cent. on the total amount of deposits in such institution on the first day of July in each year. Preparatory to such an assessment the treasurer of every such institution is required, within the first ten days of July in each year, to make out under oath, and de-

---

* See 2d Wallace, 201, where the argument is given.

† The reader desiring to see further argument on both sides of this question, can refer to the arguments in the next case, pp. 613–620.

liver to the comptroller of public accounts, a correct state-
ment of the total amount of all such deposits on that day in
their respective institutions.   Payment of the tax is required
to be made in semi-annual instalments, and the provision is
that the tax, so levied, shall be in lieu of all other taxes on
said institutions and the deposits therein.*

Institutions called savings and building associations are
also embraced in the same provision, but the clauses of the
section having respect to such associations are omitted, as
they are not in any view material in this investigation.
They are stock associations of a novel and peculiar char-
acter, organized under a general law, and are quite distinct
from savings banks and societies for savings, which are
merely banks of deposit and loan, having no stock, and
which were created under special charters from the legisla-
ture of the State.†

Such institutions are banks of deposit, but they have no
capital stock or stockholders, and are without any authority
to make discounts or issue any circulating medium.   Money
in limited amounts may be deposited in such banks for safe-
keeping and be withdrawn at the pleasure of the owner,
under such regulations as the charter and by-laws may pre-
scribe.   Authority is vested in the corporation by its charter
to receive such deposits in trust for the owner, and to loan,
use, and improve the same, and to apply and divide the net
income and profits thereof in just proportions among the
persons making such deposits, subject to certain reasonable
deductions as therein provided.

Like other corporations they may choose their own officers
and may admit new members; and the charter also provides
that they may sue and be sued, that they may take and hold
real estate, other than such as is conveyed as security or in
payment of debts, to a limited amount, and may vest their
funds in the stock of the State banks or other public stock
of the State or of the United States, and may dispose of the

* Session Laws 1862, p. 49.
† Comp. Stat  218.

same from time to time in such amounts as will meet the demands for the deposits made in such institution.*

Whole amount of deposits in the defendant bank on the first day of July, 1863, was $4,758,273.37, of which the sum of $500,161 was then invested and held in securities of the United States, declared by act of Congress to be exempt from taxation, as appears by the return of the treasurer of the bank to the comptroller of public accounts and by the agreed statement in the record. Prompt payment of the first instalment of the tax, as required by law, was made by the bank, less the prescribed percentage upon the amount of the deposits invested in government securities, which they refused to pay, insisting that the tax to that extent was unauthorized and illegal. Due proceedings were accordingly instituted by the plaintiff, as the treasurer of the State, to recover of the bank the balance of the tax so withheld.†  Judgment in the court below was rendered for the plaintiff, and the defendants sued out this writ of error.

1. Payment is required to be made to the treasurer of the State, for the use of the State, of a sum equal to three-fourths of one per cent. on the total amount of deposits in such institution, on the first day of July in each year, and the question is whether, by the true construction of that provision, the assessment is properly to be regarded as a tax on property or as a tax on the privileges and franchises of the defendant corporation. Viewed as a tax on property the assessment, so far as respects the amount in controversy, would be illegal, as it is well settled by repeated decisions of this court that the States cannot tax the securities of the United States, declared by act of Congress to be exempt from taxation, for any purpose whatever. Congress has power to borrow money on the credit of the United States, and the people, by making the government supreme, have shielded its action in the exercise of that power from every species of unfriendly State legislation. Undoubtedly the States may tax all subjects over which the sovereign power of the State

---

* 2 Private Laws, 1049.        † 7 General Statutes, 61.

extends, but they are not authorized to tax the instruments of the Federal government nor the means employed by Congress to carry into effect the enumerated powers of the Constitution, or any other power vested by the fundamental law in the government of the United States. Such were the early doctrines of this court upon the subject, and those doctrines have been reaffirmed and enforced in the recent decisions of the court.

All subjects over which the sovereign power of a State extends are, as a general rule, proper objects of taxation, but the power of a State to tax does not extend to those means which are employed by Congress to carry into execution the powers conferred in the Federal Constitution.*

Unquestionably the taxing power of the States is very comprehensive and pervading, but it is not without limits. State tax laws cannot restrain the action of the national government, nor can they abridge the operation of any law which Congress may constitutionally pass. They may extend to every object of value within the sovereignty of the State, but they cannot reach the administration of justice in the Federal courts, nor the collection of the public revenue, nor interfere with any constitutional regulation of commerce.†

True reason for the rule is that the Constitution of the United States and the laws of Congress made in pursuance thereof are the supreme law of the land, and the express provision is that the judges in every State court shall be bound thereby, anything in the constitution or laws of any State to the contrary notwithstanding.‡

2. None of these principles are denied by the original plaintiff. On the contrary, he admits that the States do not possess the power, by taxation or otherwise, to retard, impede, burden, or in any manner to control the operation of the constitutional laws passed by Congress to carry into

---

* McCulloch v. Maryland, 4 Wheaton, 429.

† Brown v. Maryland, 12 Wheaton, 448; Weston et al. v. Charleston, 2 Peters, 467.

‡ Constitution, Article VI.

execution the powers vested in the Federal government. Conceding all this, he still denies that the tax in this case is in any proper sense subject to any such objection, but insists that in any and every point of view it is a tax on the privileges and franchises of the defendant corporation, which was created by the legislature of the State, and which, by all the authorities, it is entirely competent for the State to tax, with the other property of the citizens, for the support of the State government.

Power to tax is granted for the benefit of all, and none have any right to complain if the power is fairly exercised and the proceeds are properly applied to discharge the obligations for which the taxes were imposed. Such a power resides in government as a part of itself, and need not be reserved when property of any description, or the right to use it in any manner, is granted to individuals or corporate bodies.*

Unless exempted in terms which amount to a contract, the privileges and franchises of a private corporation are as much the legitimate subject of taxation as any other property of the citizens which is within the sovereign power of the State. Repeated decisions of this court have held, in respect to such corporations, that the taxing power of the State is never presumed to be relinquished, and consequently that it exists unless the intention to relinquish it is declared in clear and unambiguous terms.†

Corporate franchises are legal estates vested in the corporation itself as soon as it is *in esse.* They are not mere naked powers granted to the corporation, but powers coupled with an interest which vest in the corporation upon the possession of its franchises, and whatever may be thought of the corporators, it cannot be denied that the corporation itself has a legal interest in such franchises.‡

Nothing can be more certain in legal decision than that

---

* Providence Bank *v.* Billings et al., 4 Peters, 563.

† P. & W. R. R. Co. *v.* Maryland, 10 Howard, 393.

‡ Dartmouth College *v.* Woodward, 4 Wheaton, 700.

the privileges and franchises of a private corporation, and all trades and avocations by which the citizens acquire a livelihood, may be taxed by a State for the support of the State government. Authority to that effect resides in the State independent of the Federal government, and is wholly unaffected by the fact that the corporation or individual has or has not made investment in Federal securities.[*]

Private corporations engaged in their own business and pursuing their own interests according to their own will are as much subject to the taxing power of the State as individuals, and it cannot make any difference whether the tax is imposed upon their property, unless exempted by some paramount law, or the franchise of the corporation, as both are alike under the protection and within the control of the sovereign power.[†]

Recurring to the language of the act, it is necessary to bear in mind that the defendant corporation belongs to a class of savings banks having deposits and assets, but which have no capital stock or stockholders. Such a corporation as a savings and building association, it seems, was unknown in that State at the time when the first act was passed requiring savings banks and savings associations to pay annually into the treasury of the State a sum equal to a prescribed percentage upon the total amount of deposits in their respective institutions on a given day in each year.[‡]

The original act was passed in 1851, more than ten years before the present securities of the United States were issued and put into the market. Charters were subsequently granted by the State to savings and building associations, which are stock companies, and the Tax Act of 1857 was so modified as to include the stock of those corporations.[§]

Savings and building associations, as they are called, are also included in the act under consideration as well as sav-

---

[*] Osborn v. Bank of the United States, 9 Wheaton, 859.

[†] Angell & Ames on Corporations (8th ed.), § 438; Brown v. Maryland, 12 Wheaton, 444.

[‡] Comp. Stat. 842.    [§] Comp. Stat. 218; Session Laws 1859, p. 58.

ings banks, and societies for savings.*    Hence it is that stock as well as deposits is mentioned in the provision, but it is clear that the word stock applies solely to the former class of corporations, and not to the latter, as the latter have not, and never had any capital stock.

Amount of the tax required to be paid by the defendant corporation is a sum equal to three-fourths of one per cent. on the total amount of deposits in the institution on the first day of July in each year.    Reference is evidently made to the total amount of deposits on the day named, not as the subject-matter for assessment, but as the basis for computing the tax required to be paid by the corporation defendants.    They enjoy important privileges, and it is just that they should contribute to the public burdens.

Views of the defendants are, that the sums required to be paid to the treasury of the State, is a tax on the assets of the institution, but there is not a word in the provision which gives any satisfactory support to that proposition. , Different modes of taxation are adopted in different States, and even in the same States at different periods of their history. Fixed sums are in some instances required to be annually paid into the treasury of the State, and in others a prescribed percentage is levied on the stock, assets, or property owned or held by the corporation, while in others the sum required to be paid is left indefinite, to be ascertained in some mode by the amount of business which the corporation shall transact within a defined period.

Experience shows that the latter mode is better calculated to effect justice among the corporations required to contribute to the public burdens than any other which has been devised, as its tendency is to graduate the required contribution to the value of the privileges granted, and to the extent of their exercise.    Existence of the power is beyond doubt, and it rests in the discretion of the legislature whether they will levy a fixed sum, or if not, to determine in what manner the amount shall be ascertained.

* Session Acts 1862, p. 49.

Irregularity of taxation is a fruitful source of complaint, and it is but right to say that the mode prescribed in this provision, of computing the sum to be paid, is well calculated to distribute the burdens in equal and just proportions. Arbitrary sums are almost necessarily unequal, as the legislature cannot foresee the varying circumstances of the future which may surround the business of a corporation, and which may abridge or augment its receipts and increase or diminish its profits.

Satisfactory inducements may be suggested as having prompted the mode of taxation adopted by the legislature without imputing any such motives as are supposed by the defendants.   Common justice requires that taxation, as far as possible, should be equal, and the language of the provision in this case supports no other inference than that the legislature in framing it was governed solely by that consideration.

Deposits are not capital stock in any point of view, and they are not even investments in the sense in which the word is employed in that provision.*   Where the deposit is general and there is no special agreement proved, it is doubtless true that the title of the money deposited in a bank passes to the bank, and the bank becomes liable to the depositor for the amount as a debt.†   Regarded entirely as a transaction between the bank and the depositor, it would be correct to say that the money deposited became the assets of the bank, and it may also be conceded that all such assets, unless invested in property or securities exempted from taxation, might be required to contribute to the support of the State government as the property of the bank, but it is obvious that the word deposits, as employed in that provision, is not used by the legislature in any such sense.   Whenever the law imposes a tax on property in that State, it makes provision that the value of the property shall be ascertained by appraisement, and the requirement is that the tax shall

---

* Bank for Savings v. Collector, 3 Wallace, 514.

† Thomson v. Riggs, 5 Id  678.

be assessed on the appraised value of the property. Tax-payers are required to furnish to the assessors of the town in which they reside a schedule, under oath, of all their taxable property, and it is made the duty of the assessors to appraise the same, and enter the value thereof on the appropriate lists. Municipal corporations as well as the State may levy taxes on the taxable property of the citizens, but all taxes, State and municipal, are collected by the collectors of the towns. Joint stock companies, and all chartered corporations, except banking, insurance, railroad, and savings corporations, &c., are subject to these regulations.

Attention to those regulations, even for a moment, will show that none of them have any application to the assessment described in the provision under consideration. Instead of a list furnished to the assessors of the town the requirement is that a return shall be made to the comptroller of public accounts, and the assessment as required to be made is wholly irrespective of value or of profit or loss. Town collectors have nothing to do in collecting the amount, and the tax, when paid, is in lieu of all other taxes on the institution. Other corporations in the State, with certain exceptions, are taxed upon a valuation " in the same manner and to the same extent as if such property was owned by an individual resident in this State."* But the corporation defendants are only required to pay to the treasurer of the State a sum equal to three-fourths of one per cent. on the total amount of their deposits on the first day of July in each year. They pay nothing for municipal and local taxes, either to the cities, towns, or districts in which they are located, and they are expressly exempted from all other taxation. Much weight is also due to the fact that the taxes are imposed directly by the legislature, without regard to investment or value, and if the amount was fixed by law, all, we think, would agree that the assessment was a tax upon the corporation, and not upon its property as contended by the defendants.

---

* Revised Statutes, 709.

Neither investment nor the value of the deposits being mentioned in the provision, it seems clear that they are unimportant in this investigation, as the amount of the tax is the same whether the deposits, on the day named, have or have not been invested, and whether they are above the par value or of no value at all. Moneys received constitute deposits in the sense in which the word is used in that provision, and the total amount of such deposits on that day furnishes the true basis of computation, wholly irrespective of their market value or of the disposition made of the funds by the defendants.*

Looking at the case in any point of view, we are of the opinion that there is no error in the record.

JUDGMENT AFFIRMED WITH COSTS.

The CHIEF JUSTICE, GRIER, J., and MILLER, J., dissented; on the ground that the tax was a tax on the property and not upon the franchises and privileges of the plaintiff in error.

[See the next case.—REP.]

---

* Savings Bank *v.* Collector, 3 Wallace, 514.