## Insurance Company of North America *versus* The Commonwealth.

By the Act of March 20th 1877, imposing a tax upon " the entire amount of premiums received by insurance companies, " it was intended to tax all the business of such companies as evidenced by the entire premiums received by them from all sources, whether within or without the state ; and such act is not repugnant to the provisions of the constitution of the United States, prohibiting any interference with inter-state commerce.

May 20th 1878. Before Agnew, C. J., Mercur, Gordon, Paxson, Woodward and Trunkey, JJ. Sharswood, J., absent.

Error to the Court of Common Pleas of *Dauphin county:* Of May Term 1878, No. 159.

Debt by the Commonwealth of Pennsylvania against the Insurance Company of North America, to recover a balance of taxes on premiums of insurance received by the defendant company.

The facts were these : The defendants entered an appeal from a settlement of the account of the Insurance Company of North America with the Commonwealth, made by the auditor-general, in the month of August 1877, charging the company with a tax of eight-tenths of one per cent. (per Act of March 20th 1877,) on the sum of $681,629.57, being the gross amount of premiums received by the company in other states than the state of Pennsylvania, from the date of the passage of that act to June 30th 1877, a period of less than four months; the said tax amounting to $5485.04.

The account charged against the company was  .    .  $6746.65
The company was credited with payment of the tax on
    all premiums received in the state of Pennsylvania      1301.61
                                                          ─────────
Leaving a balance unpaid, as per settlement  .    .  $5485.04

The 6th section of the Act of 1877, under which the settlement was made by the auditor-general, is as follows :

" That hereafter it shall be the duty of the president, secretary, or other proper officer of each and every insurance company or association, incorporated by or under any law of the Commonwealth, except companies doing business upon the purely mutual plan, without any capital stock or accumulated reserve, and purely mutual · beneficial associations whose fund for the benefit of members, their families or heirs, is made up entirely of the weekly or monthly contributions of their members, and the accumulated interest thereon, to make report in writing to the auditor-general, semi-annually, upon the 1st day of July and January in each year, setting forth the entire amount of premiums received by such company or association during the preceding six months, whether the said premiums were received in money, or in the form of notes, credits, or any other substitute for money ; and every such company or association

shall pay into the state treasury, at the dates aforesaid, a tax of eight-tenths of one per centum upon the gross amount of said premiums : Provided, That said report shall be made under oath or affirmation, and that it shall be the duty of the accounting officers of the Commonwealth to add ten per centum to the account of any company or association whose officers shall neglect or refuse, for a period of thirty days, to· make the said report or to pay into the state treasury the tax imposed by this section."

The declaration was in debt to recover the above balance.

The defendants pleaded, first, the general issue ; and afterwards, by consent, on the trial of the cause, two additional special pleas were filed, setting forth that the defendants were ·a corporation created by the state of Pennsylvania, authorized to effect insurance against fire and the perils of the seas, and that $5230.05, part of the sum claimed, was a tax of eight-tenths of one per cent. assessed by the auditor-general on $653,757.22, received as gross premiums on contracts of insurance effected and entered into by the defendants in the several other states and territories of the United States of America, between the time specified in the several amounts therein mentioned. And that the said company so received and collected the said premiums, at agencies established in such other states and territories, by virtue of licenses and permissions granted to the defendants by the lawful authorities thereof, to transact therein said business of insurance under the laws of such other states and territories. And that no part of the said sum was received for business transacted or premiums taken within the state of Pennsylvania, nor for insurances on property or effects within the state of Pennsylvania. And that in all such other states and territories the defendants were obliged to and did pay taxes imposed by the laws of such other states and territories while transacting their business.

The second special plea was a similar averment as to the remainder of the sum claimed for premiums received outside of Pennsylvania, in the British provinces of New Brunswick, Newfoundland and Canada, amounting to $214.98.

The plaintiff demurred to the two special pleas, and on the trial of the issue raised by the general issue on the 11th of March 1878, admitted the truth of the facts set forth in these two special pleas, and the learned judge who tried the cause directed the jury to find in favor of the Commonwealth for the sum of $5989.54, reserving the following points for the opinion of the court :—

If the court shall be of opinion that the defendants are not liable for the tax laid by the legislature of Pennsylvania on premiums of insurance received by the defendants in other states of the United States, and within the limits of the state of Pennsylvania, upon contracts of insurance made by the defendants in places without the limits of Pennsylvania and with citizens ˙of

[Insurance Co. of North America *v.* Commonwealth.]

other states, then the verdict shall be set aside, and judgment shall be entered for the defendants.

If the court shall be of opinion that the defendants are liable for taxes assessed upon such premiums, then judgment shall be entered for the plaintiffs upon the verdict.

Afterward, April 11th 1878, the court below, Pearson, P. J., gave judgment in favor of the Commonwealth on the points reserved and the demurrer to the special pleas, which were argued at the same time, delivering the following opinion :—

" The points reserved, in effect, present two questions: 1. Does the sixth section of the act of March 20th 1877, impose a tax on the gross receipts of the defendant corporation, for business done without as well as transacted within the state of Pennsylvania, on which it received money, notes, credits, or any other substitute for money ?    And, 2. Can the tax on business done out of the state be lawfully imposed by our legislature ?

" The language of the statute in the present case, imposing the tax, is quite as strong and almost identical with that found in the act of the 23d of March 1866, imposing a tax on the gross receipts of railroads, which was construed by the Supreme Court of the United States, in the Reading Railroad case, 15 Wall. 284, to extend to *all* receipts, as well on business done within as that without the limits of the state of Pennsylvania.

" When the same words, substantially, are used in the Act of Assembly they should receive the same construction ; especially when applied to a corporation doing business of a kind where it is more objectionable than that transacted by this company.

" The Insurance Company of North America owes its whole existence to the laws of Pennsylvania.    It received a perpetual charter from this state in the year 1794, under which it continued to transact its business within this Commonwealth until the 27th day of February 1854, when it was authorized by statute to extend it to any of the states of the Union, or without its limits, giving its contracts the same validity as if made in this state.    It is by virtue of the authority contained in that law that the contracts were made on which the present tax is imposed.    We cannot doubt but that it was the intention of the legislature, in enacting this statute, to tax *all* of the receipts of this company, whether arising from contracts made and business transacted without as well as within the state. The design was to impose it on all of the receipts from its business, wherever done.

" 2. Is there anything in the constitution of this state or of the United States which prevents the imposition of the tax on business done or money due in another state ?    It certainly is not a tax on commerce between the states.    It is said in the argument that insurance is as necessary to commerce as bills of lading, decided to be protected in 24 How. 169.    In that case it was not merely the

bill of lading that was exempted, but the gold dust or bullion which it represented. An insurance, although common, is not necessary to commerce. Many strong merchants or wealthy firms never insure. But this very point is decided in Paul *v.* Virginia, 8 Wall. 168 : 'A policy of insurance is not a transaction of commerce, it is a mere contract.'

" This tax is much less objectionable than that imposed on the gross receipts of railroads. In many cases they were not incorporated by the laws of Pennsylvania, but were the creation of other states, and barely permitted to pass through this; yet a tax of $76,788 was imposed on the New York and Erie Railway, which only ran about forty-five miles through Pennsylvania, and that was sustained in Erie Railway, 21 Wall. 492.

" The Supreme Court of the United States decided that a tax could not be imposed on goods by the ton carried through Pennsylvania to or from other states, in the Reading Railroad Company case, 15 Wall. 232, which met my entire approbation ; yet held the same company liable to a tax on the gross receipts of freight in the case of the same road : Ibid. 284.

" We are unable to see the difference between taxing the freight and the money paid for its transportation; each has the same effect on the commerce between the states, and each state through which the road passes might impose a tax on the gross receipts *ad libitum*, until the commerce would be wholly excluded, as fully as if imposed on the article carried by the barrel, the bushel, or the ton. The law on both points is too firmly settled to be shaken : 18 Wall. 206; 21 Id. 492. The individual opinion of one lawyer or judge is of no consequence whatever.

" It is urged that the business done or obligations held out of the state cannot be taxed. This is not done by a natural but by an artificial person, over which the state has entire control. It is only when the premium is received, or the same secured to the corporation in the form declared in the act, that the tax is imposed. Then, in contemplation of law, it comes to the corporation in this state. It is within its power, and considered to be in its treasury.

" It may be considered that money at interest, whether secured by note or mortgage, cannot be taxed as such. The state must have jurisdiction of the person or property, and money at interest is not considered as property, except in the state where the owner resides. See reasoning of the court in the Foreign Bond case, 15 Wall. 300, and the principles there laid down.

" The same doctrine has been reiterated in many other cases and in different states. A mortgage must be taxed where the owner lives, not where the mortgaged land lies : 19 Md. 13. Yet the state of Pennsylvania has, for nearly forty years, taxed her citizens for money at interest due in other states, and the right has never been questioned. In the language of Chief Justice Mar-

[Insurance Co. of North America *v.* Commonwealth.]

shall, it has jurisdiction of the person. In the present case, the state has full jurisdiction over this corporation, and can tax the money due it wheresoever situated.

" We are of the opinion that the law is in favor of the state on the points reserved, and therefore direct judgment to be entered on the verdict in favor of the Commonwealth."

The defendants took this writ, and alleged that: 1. The court below erred in entering judgment for the plaintiffs below on the demurrer to the special pleas filed.

2. In entering judgment for the plaintiffs below on the points reserved.

3. In deciding that the defendants below were liable to pay a tax to the Commonwealth of Pennsylvania, under the provisions of the Act of 20th March 1877, on the gross amount of premiums received for all insurances effected in the states and territories of the United States, at agencies established therein, by virtue of licenses and permission granted by the governments thereof to the said defendants to transact their said business therein.

4. Because the true intent and meaning of the said act was to impose a tax on the gross premiums of insurance collected and received in Pennsylvania for insurance effected within the said state, and not on gross premiums received and effected without the state of Pennsylvania.

5. Because a tax on gross premiums received by the defendants, for contracts of insurance effected outside of the state of Pennsylvania, with citizens of other states and foreign countries, is a tax on the transactions or business of the company with citizens of other states and foreign countries, is within the prohibition of the constitution of the United States, contained in art. 1, sect. 8, giving to Congress the power to regulate commerce with foreign nations and among the several states and with the Indian tribes.

*Morton P. Henry* and *Richard C. McMurtrie*, for plaintiffs in error.—By the Act of 1870, the state did not intend to impose a tax on insurance made outside the limits of the state. In the case of railways, the tax has only been imposed on the proportion of gross receipts receivable in Pennsylvania: Reading Railroad Co. *v.* Pennsylvania, 15 Wall. 284; Erie Railroad Co. *v.* Pennsylvania, 21 Id. 492; and it is a cardinal rule of construing statutes that a received construction is assumed to be the meaning in subsequent statutes in *pari materia* and using the same language. As the business of this company is neither protected nor carried on by permission of Pennsylvania, outside the limits of that state, such business is not therefore the subject of its taxation in Pennsylvania, nor intended to be made the subject of such a tax by the words of this act. When it transacts business in other states, it owes its authority and receives its protection from the local govern-

[Insurance Co. of North America *v.* Commonwealth.]

ments, and in return is bound to them for the taxes: Bank of Augusta *v.* Earle, 13 Peters 519; Lafayette Ins. Co. *v.* French, 18 How. 405; Paul *v.* Virginia, 8 Wall. 168; Ducat *v.* Chicago, 10 Id. 410; Baltimore and Ohio Railroad *v.* Harris, 12 Id. 65.

Trading corporations, such as the Insurance Company of North America, are merely aggregations of capital for commercial purposes. They are not to be confounded with corporations exercising a governmental power in private hands, such as canal and railroad companies. Insurance companies, like banks, iron companies, shoe and watchmaking companies, in no sense exercise a governmental franchise. They are partnerships with limited liability, having perpetual succession, and the right to act by a common head, and under a common seal. The property of such a corporation cannot be followed for the purposes of taxation outside the state of Pennsylvia, if that of an individual cannot: Railroad Co. *v.* Harris, 12 Wall. 81; Green *v.* Van Buskirk, 7 Id. 150.

The fiction that personal property follows the law of the *situs* of the owner, always yields when it is necessary for the purposes of justice that the *situs* of the thing should be examined: Hoyt *v.* Commissioners of Taxes, 23 N. Y. 228.

The taxation here imposed is an interference with or a regulation of inter-state commerce and is within the prohibition of the Constitution of the United States.

We have seen that a trading corporation is an aggregation of capital of citizens of the state, and as such an inhabitant of the state. Such a corporation is treated as a citizen of the state of its creation under the "judiciary act," giving jurisdiction to the courts of the United States in suits between citizens of different states: Ohio and Mississippi Railroad *v.* Wheeler, 1 Black 285; Marshall *v.* The Balt. & O. Railroad, 16 How. 314; Covington Drawbridge Co. *v.* Shepherd, 20 Id. 227. Pennsylvania cannot create that artificial citizenship outside its own borders. A Pennsylvania corporation admitted to transact business elsewhere is treated as an artificial inhabitant of Pennsylvania, allowed to come into another state with the privileges granted by the state of its creation on terms. If Pennsylvania can lawfully tax such transactions of its corporations, with citizens of other states, it can levy a tax on all transactions of its citizens, natural or artificial, entered into beyond its jurisdiction. Pennsylvania may forbid its corporations to transact its business outside its own borders; it cannot by any permission, express or implied, obtain a control over the transactions of citizens of other states with one of its corporations elsewhere on the plea that it permitted it to act outside of the state: Doyle *v.* Continental Ins. Co., 4 Otto 535; Insurance Co. *v.* Morse, 20 Wall. 445. Where the line of state taxation begins and ends as an interference with commerce is difficult to define. It is one of practical application governed by the subject

on which it is laid, and not by the manner of its impost: State Tax on Railway Gross Receipts, 15 Wall. 296; Welton *v.* Missouri, 1 Otto 281; Brown *v.* Maryland, 12 Wheat. 419; Inman Steamship Co. *v.* Tinker, 4 Otto 238; Almy *v.* California, 24 How. 169.

*Lyman D. Gilbert,* Deputy Attorney-General, and *George Lear,* Attorney-General, for the Commonwealth.—The subjects of taxation are persons, property and business. This is a tax on property. It cannot be taxed in any state except the *situs* of the owner, although the business from which it is derived may be the subject of taxation in another state. The property of a corporation, or that of a natural person, is taxable only where it exists or he resides; but a corporation, which is the creature of the law of the state which creates it, has no power to transact business beyond the limits of the state, except by permission, and upon such terms and conditions as any other state may impose upon it. And these terms and conditions take the form of licenses to transact business in other states than that of its creation, and constitute a tax on business. But the tax in this case is a tax on the corporation for property received and owned by it, without regard to the place from which it is derived, and the tax on the business from which this property is accumulated is not double taxation, for the tax on the property in this state is not on the same subject of taxation as the tax on the business of the corporation in another state by which the property is made.

When the law contains the words the "entire amount of premiums received," as in this case, without limitation as to the place from whence derived, how can there be a question raised, or a doubt entertained, that the state of Pennsylvania, by this enactment, intended "to impose a tax on the gross receipts from the business of insurance transacted by the insurance company without the limits of Pennsylvania?"

The expression of "gross receipts from the business of insurance transacted" without the state, confounds two subjects of taxation in a form which may lead to confusion. The gross receipts constitute the property which is taxed, which is a proper subject of taxation, while the business of insurance transacted without the limits of the state is another subject of taxation, and can be taxed only in the state where it is transacted. The tax in this case is imposed on the former, and not on the latter, subject of taxation. The former is in this state, while the latter is transacted beyond its limits.

In the case of McKeen *v.* The County of Northampton, 13 Wright 519, it was held that the capital stock, owned by a citizen of Pennsylvania, in a manufacturing corporation located in another state, is taxable for state and county purposes.

That case was decided in reference to property in the form of stock in a corporation of another state, owned by a citizen of Penn-

[Insurance Co. of North America *v.* Commonwealth.]

sylvania, and the decision was based upon the ground that "being a citizen of this state, it is clear that he is subject, personally, to its power to tax, and that all his property, accompanying his person, or falling legitimately within the territorial jurisdiction of the state, is equally within this authority. The interest which an owner of shares has in the stock of a corporation is personal. Whithersoever he goes it accompanies him, and when he dies his domicile governs its succession."

If this be the rule with regard to a natural person, the same doctrine *a fortiori* would apply to a corporation. The latter can have no domicile except in the state where it is created, and the power which created it has the power of taxation of its property in the state where it exists, from whatever state derived.

The decision in the Reading Railroad Co. *v.* Pennsylvania, 15 Wall. 284, was in favor of the state, and sustained the tax on gross receipts derived from freight exported to points without the state. The practice in the auditor-general's office was not to tax only the proportion of gross receipts receivable in Pennsylvania, but to tax the proportion of the gross receipts which the road in Pennsylvania bore to the whole road: Erie Railroad Co. *v.* Pennsylvania, *supra.*

The issuing of a policy of insurance is not a transaction of commerce within the meaning of the provision in the constitution that Congress shall have the exclusive power "to regulate commerce with foreign nations and among the several states," even though the parties be domiciled in different states, but is a simple contract of indemnity against loss: Paul *v.* Virginia, 8 Wall. 168. But suppose that case be overruled or disregarded, and it be held that insurance is a transaction of commerce, there is still another decision of the same court standing in the way of the position of the plaintiff in error. The carrying of freight from one state to another is a transaction of commerce, and a law imposing a tax upon it is unconstitutional: Reading Railroad Co. *v.* Pennsylvania, 15 Wall. 232. But there the prohibition of the constitution stops. While the state cannot impose a tax on a company for carrying freight, which is called a tax on tonnage, and a regulation of commerce if it be on freight carried from one state to another, a law imposing a tax on the gross receipts derived from freight carried in the same manner is constitutional and valid.

Chief Justice AGNEW delivered the opinion of the court, June 3d 1878.

The question in this case is not doubtful, and were it so it would be our duty to resolve the doubt in favor of the state, lest she be deprived of redress in a higher court. The doctrine of states rights in a sense which robs the federal government of just rights, should not be invoked; but states rights as found in the constitu-

[Insurance Co. of North America *v.* Commonwealth.]

tion, forbidding the enumeration of federal rights to deny others retained by the people, and declaring that the powers not delegated by the constitution, nor prohibited by it to the states are reserved to them respectively, or to the people, are justly the object of careful protection by both state and federal courts. The states are the pillars of the Union. Their fall, if dragged down by federal power, must involve both in ruin. It is therefore important that the boundaries of power be sacredly preserved. Yet these lines of demarcation are often faint and evanescent in some cases, but not so we think in this case.

The question here is whether the state can impose upon insurance companies, the creation of her own hands, a tax on all their business, as evidenced by the entire premiums brought into their treasury from all sources. That this is the scope and intent of the law, we hold.

Is this an interference with any grant of federal power, on the ground that a part of their receipts is drawn from sources outside of the state? We think not. That it is not a tax in the sense of " imposts or duties laid upon imports or exports" is plain. It is not laid on any property or article of commerce, which can be imported or exported; but is simply a tax on money or its representative—on the results or avails of business—that which belongs to the corporation *itself*, and not the property of others. It is not a tax on property in another state, but on money which is in the treasury of a corporation within this state.

It is said it transgresses the power of Congress to " regulate commerce with foreign nations, and among the several states, and with the Indian tribes." It is not a tax on anything coming in or going out of the state, or upon the means of transportation. It is not laid on any instrument of commerce, either representing or affecting commerce, as a bill of lading accompanying goods transported. It does not affect travellers coming in or going out, or property situate out of the state, in that it touches no interest outside of the state, except in that remote and incidental manner in which state taxation may affect all property entering into the commerce of the state, and which has been frequently held by the Supreme Court of the United States to be no regulation of commerce conflicting with the federal power. It is evident in the outset the case is not governed by the principles settled in such cases as Brown *v.* Maryland, 12 Wheat. 418 ; Hays *v.* Steamship Co., 17 How. 596 ; Steamship Co. *v.* Port-wardens, 6 Wall. 31 ; Passenger Cases, 7 How. 283 ; Crandall *v.* Nevada, 6 Wall. 36 ; Almy *v.* California, 24 How. 169 ; Tonnage Tax Cases, 15 Wall. 232 ; State Tax on Foreign Bonds, Id. 300. All these cases proceed on the ground that the constitutionality of a state tax law must be determined, not upon the form or agency collecting the tax, but by the *subject* on which the burden is laid : Tonnage Tax Cases, 15 Wall. 272 ; Mumm *v.*

Illinois, 4 Otto 135. As said in Doyle *v.* Continental Ins. Co., 4 Otto 341, "In all cases where the legislation of a state has been declared void, such legislation has been based upon an act or a fact which was itself illegal." But the subject of this tax, as we have said, has no relation to any article of inter-state commerce, even in a remote and indirect way. The subject—money derived from the receipts of premiums—is not susceptible of regulation by any federal law. In discussing this point we may first consider the person or party taxed—a corporation created by state law, located in the state and amenable only to its laws. It is not a citizen in the sense of the rights of persons secured by the constitution, except for the purpose of federal jurisdiction: Ins. Co. *v.* French, 18 How. 404; Paul *v.* Virginia, 8 Wall. 178; Ducat *v.* Chicago, 10 Wall. 415; Liverpool Ins. Co. *v.* Mass., Id. 573; Railroad Co. *v.* Harris, 12 Id. 81. Nor can it exercise its powers outside of the state, except by the consent of the state into which it comes: Bank of Augusta *v.* Earle, 13 Pet. 519; Paul *v.* Virginia, 8 Wall. 180, 181; Ducat *v.* Chicago, 10 Id. 410; Ins. Co. *v.* Morse, 20 Id. 456; Doyle *v.* Ins. Co., 4 Otto 540. But it derives its faculties from our law; and its power to go out of this state, in pursuit of business permitted elsewhere, it obtains from this state alone. This faculty of action or power to go elsewhere is a home franchise, and is not conferred by the law of another state, by whose permission it *exercises* the franchise within it. It is this franchise—the power to make money by its business at home and abroad—which this state assumes to control as of right, and the burthen imposed is the price it must pay for the faculty and powers conferred. By the exercise of this franchise it collects the fruits of its business, no matter where it is performed. The money which finds its way into its treasury is the product of these powers conferred by this state. In view of the corporate being thus conferred, the powers thus derived, and the products of business thus gathered, the state necessarily possesses the power to tax the products of its corporate business, for none of them possess in the slightest degree an outside character or interest.

This brings us to consider more specially the subject of the tax. As already stated a tax on gross premiums of insurance is a tax upon the receipts of money, or its representative in notes and bills, and not on property, or any article of commerce; it touches only a fund in the treasury of the company. As was said in the Gross Receipts cases, 15 Wall. 294, "the tax is laid on the gross receipts of the company; and upon a fund which has become the property of the company, mingled with its other property, and possibly expended in improvements, or put out at interest." See also, Erie Railroad Co. *v.* Pennsylvania, 21 Wall. 497. This tax is not measured by the subjects of insurance, for be the rates high or low, they do not govern, but the money only after it has passed into the hands of the company. The difference between this tax and that

[Insurance Co. of North America *v.* Commonwealth.]

in the Gross Receipt cases is marked. There the receipts were the results of transportation, more nearly approximating a regulation of commerce, and the dissent of the three judges was put upon this ground. But here the tax is on the mere results of business, involving only local transactions, and partaking of no relation to inter-state commerce.

A contract of insurance is merely a guaranty against a loss of property by fire or marine disaster. When on chattels on land or sea, it is a protection merely given to the property, for which a price is paid. This price, or premium, is but a consideration, and the right to receive it rests on the faculty imparted by the state in its charter. Why shall not the state law tax the product of this faculty? It is no burden on those living outside more than those within the state. The tax on a franchise is admitted to be lawful: Tonnage Tax Cases, 15 Wall. 277; Tax on Gross Receipts, Id. 294; Saving Society *v.* Coite, 6 Wall. 606; Osborn *v.* Bank United States, 9 Wheat. 859; Brown *v.* Maryland, 12 Id. 444; Erie Railway *v.* Pennsylvania, 21 Wall. 497. So the greater the scope of the business of an insurance company the less must be the charge, and hence the spread of its risks into other states cheapens the price.

That a policy is a mere contract of indemnity against loss of property, and not an instrument of commerce, is held in several cases: Paul *v.* Virginia, 8 Wall. 183; Ducat *v.* Chicago, 10 Id. 410; Liverpool Ins. Co. *v.* Mass., Id. 573. In the first case, Justice Field uses this language: " Issuing a policy of insurance is not a transaction of commerce. The policies are simple contracts of indemnity against loss by fire, entered into between the corporations and the assured for a consideration paid by the latter. These contracts are not articles of commerce in any proper meaning of the word. They are not subjects of trade and barter offered in the market, as something having an existence and value independent of the parties to them. They are not commodities to be shipped or forwarded from one state to another, and then put up for sale. They are like other personal contracts between parties which are completed by their signature and the transfer of the consideration. Such contracts are not inter-state transactions, though the parties may be domiciled in different states. The policies do not take effect—are not executed contracts—until delivered by the agent in Virginia. They are then local transactions and are governed by the local law."

This clearly indicates the nature of the subject. Among the decided cases, we find many much nearer to the border line than this, yet where the legislation of the state has been upheld. Thus a tax on brokers who dealt entirely in the purchase and sale of foreign bills of exchange: Nathan *v.* Louisiana, 8 How. 73. So a tax on deposits in a savings bank invested largely in bonds of the

[Insurance Co. of North America v. Commonwealth.]

United States, exempt from taxation: Society for Savings v. Coite, 6 Wall. 594; Provident Institution v. Mass., Id. 612. A tax on shares of stock in a railroad running through several states, in proportion to the length of the road in the state: Delaware Railroad Tax, 18 Wall. 206, 229; and on its income, Id. 231. And a tax on warehouses used as the means of inter-state commerce: Mumm v. Illinois, 4 Otto 114. Also, a tax on the person for shares of stock in corporations in other states: McKeen v. Northampton County, 13 Wright 519, recognised in State Tax on Foreign Bonds, 15 Wall. 325.

Without further elaboration, we are of opinion the tax in this case on the entire premiums of the company is not illegal, or contrary to any provision in the Constitution of the United States.

Judgment affirmed.