## SOUTHERN COTTON OIL CO. *v.* WEMPLE.

*(Circuit Court, N. D. New York.* November 14, 1890.)

TAXATION—FOREIGN CORPORATIONS DOING BUSINESS WITHIN THE STATE.

   A foreign manufacturing company which maintains an established location and an agent in New York city for the purpose of selling its products or facilitating their sale, and which keeps funds in New York city to maintain its place of business and to enable its agent to carry on his operations, is "doing business within the state" within the meaning of Laws N. Y. 1885, cc. 359, 501, which provide that every foreign corporation "doing business within this state" shall be subject to a tax on its corporate franchise or business, to be computed on the basis of the amount of capital stock employed within the state.

In Equity., On bill for injunction.
*W. W. MacFarland*, for complainant.
*Chas. F. Tabor*, Atty. Gen., for defendant.

WALLACE, J. This suit is brought by complainant to restrain the collection of a tax assessed against it by the comptroller of the state of New York for the years 1887, 1888, and 1889, under a statute which enacts that "every corporation, joint-stock company, or association whatever, now or hereafter incorporated or organized under any law of this state, or now or hereafter incorporated or organized by or under the laws of any other state or country, and doing business in this state, shall be subject to pay a tax upon its corporate franchise or business." Laws N. Y. 1885, c. 359. The statute provides that "the amount of capital stock, which shall be the basis for tax, * * * shall be the amount of capital stock employed within this state." Id. c. 501. Complaint is not made of any excessive or irregular assessment, but the bill avers that the complainant is not subject to taxation, and that the assessment is void. The complainant is a manufacturing corporation, organized under the laws of New Jersey, and having its principal place of business in that state. Its factories and plant are all situate outside the state of New York. It sells its products in various states and in foreign countries, and for that purpose, during the years 1887, 1888, and 1889, it maintained a sales agency and office at New York city, and kept a bank account there for the convenience of its local transactions. Its corporate meetings have always been held either at its principal office in New Jersey, or in Philadelphia, where it has a branch office, and where its books of account are kept and its general financial business is done. The president of the corporation deposes as follows:

"Since about October, 1887, the company has had a sales agent in the city of New York, whose duty it has been to make sales of the products of the company's mills. These products are not regularly kept on store at any place in the state of New York, but the sales agent receives orders, which he transmits to the company's officers and managers, and the goods are then forwarded from the company's mills for delivery to the purchaser. Such deliveries are, and always have been, made in the same barrels, tanks, or packages in which the products have been brought from the mills into the state, and without opening or breaking any of the tanks, barrels, or packages, ex-

cept that in certain instances, in 1888, purchasers having ordered refined oil, some crude oil was brought to New York and refined by certain refiners, under contract with the complainant, and when so refined was delivered to the purchasers. Occasionally a small amount of oil or other product of the company's mills in excess of actual sales has been sent to New York, and placed in store until sold. Such products have always been stored, and subsequently sold and delivered in the barrels or packages in which they have been brought into the state. The total amount of such sales from store during the years 1887, 1888, and 1889 has not exceeded 5 per cent. of the total sales made by the New York sales agent. The proceeds of all sales made by the New York agent were either sent to the Philadelphia office or deposited in bank, subject to the drafts of that office, as hereinafter stated. During the year 1888 the company, in the state of New York, had an average deposit of about $15,000, and in the year 1889 about $88,000. These deposits were subject only to the draft of the Pennsylvania office. The sales agent had a small bank account, never exceeding $2,500, for payment of office expenses. Except as above stated, the complainant has done no business of any kind whatever in the state of New York, and all the sales and transactions of its sales agent have been conducted in the manner above stated."

The tax authorized by the statute is upon the privilege of foreign corporations to do business within this state, and is not one upon property. *People* v. *Trust Co.*, 96 N. Y. 387; *People* v. *Mining Co.*, 105 N. Y. 76, 11 N. E. Rep. 155; *Home Ins. Co.* v. *New York*, 134 U. S. 594, 10 Sup. Ct. Rep. 593. Such a tax has no reference to the character of the property in which the capital of the corporation is invested or used, and its legality is not affected by the nature of the property upon which it operates. Whether the property upon which it may incidentally operate is taxable or not, is immaterial. *Wallace* v. *Myers*, 38 Fed. Rep, 184; *Society* v. *Coite*, 6 Wall. 594; *Institution* v. *Massachusetts*, Id. 631; *Home Ins. Co.* v. *New York*, 119 U. S. 129, 8 Sup. Ct. Rep. 1385. The real question, and the only question, in the case concerning the legality of the tax is whether, upon the facts shown, the complainant was doing business in this state. If it was not, within the meaning of this statute, there was no statutory authority for the tax which has been assessed against it. This question is one of the interpretation of a state statute. It is one which it is peculiarly the province of the state courts to decide, and one as to which their decisions, and not those of this court, are authoritative. It has been somewhat considered by the court of appeals in *People* v. *Trust Co.* and *People* v. *Mining Co.*, *supra*, but in no other adjudications which have been brought to the attention of this court. The case of *People* v. *Commissioners of Taxes*, 23 N. Y. 242, is also relied upon by the complainant as throwing some light upon the meaning of the statute; but that judgment seems to be of but little value here, because the tax under consideration was a tax upon property, and the question was as to the character of the property or investments subject to the tax. In *People* v. *Trust Co.* the question of the meaning of the term "doing business" or "corporate business" was not involved; but EARL, J., after stating that the inquiry was not presented, used this language:

"Does it mean occasional or incidental corporate business, or continuous businesss substantially through the year? * * * Does not the statute,

when it provides as the measure of the tax the amount of dividends earned by the entire business of the corporation, or the entire cash value of its capital stock, mean by 'its corporate business' substantially the whole or the main corporate business which it was chartered to transact? These questions we leave unanswered."

Since that case was decided the statute has been amended so that the measure of the tax is no longer the amount of dividends earned by the entire business of the corporation, or the entire cash value of its capital stock, but is "the amount of capital stock employed within this state." In other words, the present act apportions the tax, and measures it as to the business done within this state by the amount of capital employed here in doing it. In *People* v. *Mining Co.* the meaning of the term was necessarily involved, but the decision falls short of solving the present question. In that case the corporation taxed was a Utah mining company. While most of its business was done in Utah and Chicago, its silver bullion was all sent to New York city, and sold there. The proceeds were deposited there, and in part loaned and in part paid out for the company's business there, the balance being sent to Utah and Chicago for use in the business. The president, secretary, and treasurer of the corporation had their offices in New York city, its directors held their annual meetings there, and all its dividends were paid there. Referring to these facts, the court said:

"There was thus a very substantial portion of its business done in the city of New York. The business did not consist of an occasional transaction, but an office was kept there, and the business continuously transacted there during the whole year. We cannot construe the words 'doing business in this state' to mean the whole business of the corporation within this state, and while we are not prepared to hold that an occasional business transaction, that keeping an office where meetings of the directors are held, transfer-book kept, dividends declared and paid, and other business merely incidental to the regular business of the corporation is done, would bring a corporation within the act, yet when, as in this case, all these things are done, and in addition thereto a substantial part of the regular business of the corporation was carried on here, then we are unable to say that the corporation was not brought within the act as one 'doing business within the state.'"

According to the views thus expressed, doing business within the state does not consist of occasional transactions, or the keeping of an office where transactions take place which are merely incidental to the regular business of the corporation. Applying them to the present case, the occasional refining of oil in New York and the occasional storage of products in advance of sales there by complainant, without more, would not constitute doing business here. In construing the statute regard must unquestionably be had to the nature of the transactions which it is competent for the state to regulate, and it should not receive a construction which would defeat its validity by extending its operation to subjects which are beyond the taxing power of the state. The state could not lay a tax upon the mere privilege of soliciting orders here for goods in behalf of sellers doing business in other states, because it would be one upon interstate commerce, and amount to a regulation of commerce which

belongs solely to congress. *Robbins* v. *Taxing-District,* 120 U. S. 489, 7 Sup. Ct. Rep. 592; *Asher* v. *Texas,* 128 U. S. 129, 9 Sup. Ct. Rep. 1. The statute ought not to be interpreted as taxing a privilege of that description. But a foreign corporation, which establishes a business domicile here, and brings its property within this jurisdiction, and mingles it with the general mass of commercial capital, is taxable here; and the power of the state is ample to tax its property directly or to lay a tax upon its privilege of doing business, whether the property consists of funds deposited in bank or of goods sent here from other states, not in transit merely, but to remain here till used or sold. The principle of the present statute is that such corporations shall contribute according to the value of their capital "employed within the state." It lays the tax upon the privilege, and measures the amount by the amount of property which is protected here. Reasonably interpreted, the statute means by "doing business within this state" using this state as a business domicile for transacting any substantial part, even though a comparatively small part, of the business which the company is organized to carry on, and in which its capital is embarked. It would seem that a manufacturing company which maintains an established location here, and an agent, for the purpose of selling its products or facilitating their sale, carries on a part of its ordinary business here, and has a business domicile here; and if it keeps funds here for maintaining its place of business, and to enable it to carry on the operations of its agent, such a foreign company would seem to be taxable under the statute. Certainly it cannot matter that the volume of business done is small, or that the location, instead of being a warehouse or a shop, is an office or a sample-room.

The case made by the complainant is not free from doubt, but, after as forcible and persuasive a presentation in its behalf as the facts can warrant, the conclusion is reached that it is subject to the tax authorized by the statute. The question whether a court of equity has jurisdiction to restrain the collection of a tax, under the circumstances of this case, does not require decision in view of the conclusion reached. The injunction is denied.