## Commonwealth *v.* Life Assurance Company of Pennsylvania, Appellant.

Argued May 26, 1965. Before BELL, C. J., MUS-MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Harry J. Rubin,* with him *Morris J. Dean,* and *Krekstein and Rubin,* and *Dean and Dean,* for appellant.

*Eugene J. Anastasio,* Deputy Attorney General, with him *Walter E. Alessandroni,* Attorney General, for Commonwealth, appellee.

*Sanford D. Beecher,* and *Duane, Morris & Heckscher,* for amicus curiae under Rule 65.

OPINION BY MR. JUSTICE ROBERTS, November 9, 1965:

This appeal is by the Life Assurance Company of Pennsylvania, a stock life insurance company organized under the laws of this Commonwealth, from an order of the Court of Common Pleas of Dauphin County, sitting as the Commonwealth Court, sustaining the imposition of a gross premiums tax under the Act of February 21, 1961, P. L. 33, 72 P.S. §§2270.1-2270.10.[1] Appellant attacks the constitutionality of the Act and the interpretation given certain language contained

---

[1] Hereinafter referred to as the Act of 1961.

therein by various agencies of the Commonwealth and by the court below.

The Act of 1961 imposes upon domestic *life* insurance companies a tax at the rate of 2% on the premiums received from business done within the Commonwealth.[2] It imposes an identical tax upon all foreign insurance companies without regard to the type of insurance coverage provided.[3]

Appellant filed a Gross Premiums Tax Report for the year ending December 31, 1961, but failed to remit the tax due thereunder claiming that the Act of 1961 was invalid. Petitions contesting the imposition of the tax having been denied by the appropriate state departments and boards,[4] appellant perfected an appeal to the court below where the Act and the tax imposed were sustained.

In urging reversal of the decision below, appellant bases its numerous objections to the tax sought to be imposed upon both statutory and constitutional grounds.

Appellant first argues that the imposition of a gross premiums tax upon domestic life insurance companies results in their being subjected to a Pennsylvania tax burden greater than that imposed upon competing foreign insurance companies. The inequality is said

---

[2] Act of February 21, 1961, P. L. 33, §§1, 2, 72 P.S. §§2270.1, 2270.2. Section 2 of the Act provides for the imposition of the tax upon "every insurance company" as defined by the Act. Act of February 21, 1961, P. L. 33, §2, 72 P.S. §2270.2. Section 1 defines the term "insurance company" to include "every insurance company . . . incorporated . . . under the laws of other states . . . engaged in transacting insurance business of any kind or classification within this Commonwealth; and every life insurance company . . . organized . . . under any law of this Commonwealth . . . ." Act of February 21, 1961, P. L. 33, §1, 72 P.S. §2270.1.

[3] Act of February 21, 1961, P. L. 33, §§1, 2, 72 P.S. §§2270.1, 2270.2.

[4] See Act of February 21, 1961, P. L. 33, §5, 72 P.S. §2270.5.

to arise by reason of the fact that both foreign and domestic insurance companies pay the same 2% gross premiums tax under the Act of 1961, while only domestic life insurance companies pay in addition a capital stock[5] and net income[6] tax. Therefore, appellant argues, domestic life insurance companies are placed at a disadvantage to their foreign competitors and denied the equal protection and uniformity of treatment which the federal[7] and state[8] constitutions guarantee.[9]

We cannot agree. The Act of 1961 imposes precisely the same tax upon foreign insurance companies as is imposed upon domestic life insurance companies, such as appellant. What appellant seeks is a deter-

---

[5] Act of June 1, 1889, P. L. 420, as amended, 72 P.S. §§1871-1903.

[6] Act of May 16, 1935, P. L. 208, as amended, 72 P.S. §§3420a-3420n.

[7] U. S. Const. amend. XIV, §1.

[8] Pa. Const. art. 9, §1. So far as the reasonableness of classifications made for the purposes of taxation is concerned, the uniformity clause of the Constitution of Pennsylvania and the equal protection clause of the Constitution of the United States stand in pari materia. *Commonwealth v. Budd Co.*, 379 Pa. 159, 167, 108 A. 2d 563, 566 (1954); *Commonwealth v. Fireman's Fund Ins. Co.*, 369 Pa. 560, 565, 87 A. 2d 255, 258 (1952); *Commonwealth v. Girard Life Ins. Co.*, 305 Pa. 558, 562, 158 Atl. 262, 263 (1932).

[9] Appellant also urges that the Act of 1961 is violative of the due process clause of the federal constitution, U. S. Const. amend. XIV, §1. We find no merit in this contention. Nothing in the record suggests that the burdens imposed upon appellant by the Gross Premiums Tax Act bear no reasonable relationship to the benefits accorded it by the Commonwealth. Absent such a showing, we may not invalidate the tax on due process grounds. See *Ott v. Mississippi Valley Barge Line Co.*, 336 U.S. 169, 69 S. Ct. 432 (1949); *Wisconsin v. J. C. Penney Co.*, 311 U.S. 435, 61 S. Ct. 246 (1940). We are unable to say that "the state has [not] given anything for which it can ask return." *Wisconsin v. J. C. Penney Co.*, supra at 444, 61 S. Ct. at 250.

mination that a tax which makes no distinction in its treatment of appellant and its foreign competitors is unconstitutional because of burdens placed upon domestic life insurance companies by other taxing measures. Such an argument is misdirected. The Act of 1961 makes no classification between appellant and its foreign competitors and, therefore, cannot be said to violate either the federal or state constitutions by reasons of classifications made by other legislation. As to appellant and its foreign competitors, the Act of 1961 is both equal and uniform.[10]

Appellant next contends that the Act of 1961 is violative of these same constitutional provisions by reason of the fact that domestic life insurance carriers are taxed thereunder whereas domestic nonlife carriers are not similarly burdened.

While the Act, for purposes of imposing a gross premiums tax, distinguishes between domestic life and all other domestic insurance carriers, such distinction does not in and of itself rise to a constitutional

---

[10] In support of its novel assertion that the Act of 1961, although uniform and equal in its treatment of appellant and its foreign competitors, results in arbitrary and unreasonable discrimination in violation of the equal protection clause of the federal constitution, appellant relies upon the recent case of *Reserve Life Ins. Co. v. Bowers*, 380 U.S. 258, 85 S. Ct. 951 (1965) (per curiam). *Reserve Life Ins. Co. v. Bowers* will not support such a contention. In that case, as well as in every other case cited by appellant in support of its position, see *Wheeling Steel Corp. v. Glander*, 337 U.S. 562, 69 S. Ct. 1291 (1949); *Power Mfg. Co. v. Saunders*, 274 U.S. 490, 47 S. Ct. 678 (1927); *Hanover Fire Ins. Co. v. Harding*, 272 U.S. 494, 47 S. Ct. 179 (1926); *Southern Ry. Co. v. Greene*, 216 U.S. 400, 30 S. Ct. 287 (1910), the classification arose out of the contested legislation and not as the result of the cumulative effect of other, unrelated measures. We are unable to find any authority for the proposition that a concededly nondiscriminatory tax becomes constitutionally tainted merely because other taxes to which the appellant is subject accord distinctive treatment to various classes of taxpayers.

violation. See *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 79 S. Ct. 437 (1959) ; *State Bd. of Tax Comm'rs of Indiana v. Jackson,* 283 U.S. 527, 51 S. Ct. 540 (1931) ; *Jones & Laughlin Tax Assessment Case,* 405 Pa. 421, 175 A. 2d 856 (1961) ; *Commonwealth v. Girard Life Ins. Co.,* 305 Pa. 558, 158 Atl. 262 (1932) ; *Heisler v. Thomas Colliery Co.,* 274 Pa. 448, 118 Atl. 394, aff'd, 260 U.S. 245, 43 S. Ct. 83 (1922) ; *Germania Life Ins. Co. v. Commonwealth,* 85 Pa. 513 (1877) ; *Coe v. Duffield,* 185 Pa. Superior Ct. 532, 138 A. 2d 303 (1958). By necessity a wide discretion must be conceded to the Legislature in the classification of various businesses or occupations for purposes of taxation. *State Bd. of Tax Comm'rs of Indiana v. Jackson,* 283 U.S. 527, 537, 51 S. Ct. 540, 543 (1931) ; *Brown-Forman Co. v. Kentucky,* 217 U.S. 563, 30 S. Ct. 578 (1910) ; see *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 79 S. Ct. 437 (1959) ; *Heisler v. Thomas Colliery Co.,* 274 Pa. 448, 118 Atl. 394, aff'd, 260 U.S. 245, 43 S. Ct. 83 (1922). The equal protection clause imposes no iron rule of equality prohibiting that degree of flexibility and variety appropriate to reasonable schemes of taxation. *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 525, 79 S. Ct. 437, 440 (1959).

The only constitutional limitation placed upon the power of the Legislature to distinguish between various entities for purposes of taxation is that their basis for doing so be reasonable. See *Allied Stores of Ohio, Inc. v. Bowers,* supra, at 527, 79 S. Ct. at 441; *State Bd. of Tax Comm'rs of Indiana v. Jackson,* 283 U.S. 527, 537, 51 S. Ct. 540, 543 (1931) ; *Brown-Forman Co. v. Kentucky,* 217 U.S. 563, 572, 30 S. Ct. 578, 580 (1910) ; *Jones & Laughlin Tax Assessment Case,* 405 Pa. 421, 433-34, 175 A. 2d 856, 862 (1961) ; *Commonwealth v. Lukens,* 312 Pa. 220, 223, 167 Atl. 167, 169 (1933). And the burden of showing that the classification em-

ployed by the Legislature is not reasonable is upon the party attacking the tax. Cf. *Chartiers Valley Jt. Schools v. Allegheny County Bd. of School Dir's*, 418 Pa. 520, 546, 211 A. 2d 487, 501 (1965). "Especially is this so in light of the often reaffirmed rule that . . . ' "[legislation] will not be declared unconstitutional unless it *clearly, palpably* and *plainly* violates the Constitution." ' " Ibid. (Citations omitted.)

Thus, the burden rests upon appellant to establish that the distinctive treatment accorded by the Act of 1961 to domestic life insurance companies is unreasonable. This the appellant seeks to do by arguing that the classification made by the Act of 1961 between domestic life and nonlife insurance companies bears no reasonable relationship to the purpose of the legislation and is therefore invalid. It concedes that life insurance companies differ from casualty and fire insurance companies and for purposes of ensuring solvency and stability may be accorded different treatment. However, appellant argues that they may not be so classified for tax purposes on the ground that the purpose of raising revenue admits of no constitutionally permissible distinction between them.

In effect appellant asserts that the equal protection clause requires that the classification between domestic life and domestic nonlife insurance companies made by the Act of 1961 bear some reasonable relationship to the end sought to be obtained by that Act. While the principle that there must be a reasonable relationship between the classification made by the legislation and its purpose is undoubtedly true in some contexts, it has no application to a measure whose sole purpose is to raise revenue.[11] The application of appellant's

---

[11] The state may not classify for purposes of regulation unless such classification bears a reasonable relationship to the purpose of the regulation. However, where the state seeks to raise revenue, it need not justify any distinction drawn between the taxed

theory would lead not only to the conclusion that the entire insurance industry must be taxed identically or not at all, a conclusion in conflict with our decisions in *Commonwealth v. Girard Life Ins. Co.*, 305 Pa. 558, 158 Atl. 262 (1932) and *Germania Life Ins. Co. v. Commonwealth*, 85 Pa. 513 (1877), but would also require that all industries with the same general resources be taxed identically without regard to distinctions between them which may prompt a rational legislative determination to tax one and not another. Neither the federal nor state constitution imposes such a straitjacket upon the Legislature. See *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 79 S. Ct. 437 (1959); *State Bd. of Tax Comm'rs of Indiana v. Jackson,* 283 U.S. 527, 51 S. Ct. 540 (1931). So long as the classification imposed is based upon some standard capable of reasonable comprehension, be that standard based upon ability to produce revenue or some other legitimate distinction, equal protection of the law has been afforded. See *Allied Stores of Ohio, Inc. v. Bowers,* supra at 527, 79 S. Ct. at 441; *Brown-Forman Co. v. Kentucky,* 217 U.S. 563, 573, 30 S. Ct. 578, 580 (1910).

In terms of our previous decisions and the decisions of the Supreme Court of the United States the essential question in testing the validity of such meas-

---

and nontaxed with respect to the raising of revenue so long as some other reasonable basis for treating the various classes differently exists. Where such distinction exists, the wisdom of the legislative policy of taxing one class and not another is not a matter for the courts. "Whether the enactment is wise or unwise, whether it is based on sound economic theory, whether it is the best means to achieve the desired result, whether, in short, the legislative discretion within its prescribed limits should be exercised in a particular manner, are matters for the judgment of the legislature, and an earnest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance." *Chicago, Burlington & Quincy R. Co. v. McGuire,* 219 U.S. 549, 569, 31 S. Ct. 259, 263 (1911).

ures as the Act of 1961 is whether the distinctive treatment accorded rests upon substantial differences between the subjects so classified. See *Allied Stores of Ohio v. Bowers,* supra at 527, 79 S. Ct. 441; *State Bd. of Tax Comm'rs of Indiana v. Jackson,* 283 U.S. 527, 537, 51 S. Ct. 540, 543 (1931); *Ohio Oil Co. v. Conway,* 281 U.S. 146, 159, 50 S. Ct. 310, 313 (1930); *Bell's Gap R. Co. v. Pennsylvania,* 134 U.S. 232, 237, 10 S. Ct. 533, 535 (1890); *Jones & Laughlin Tax Assessment Case,* 405 Pa. 421, 434, 175 A. 2d 856, 863 (1961); *Turco Paint & Varnish Co. v. Kalodner,* 320 Pa. 421, 433, 184 Atl. 37, 43 (1936). And where such distinctions rest upon differences recognized and acted upon by the business world, it is not within the province of the courts to intrude. *Jones & Laughlin Tax Assessment Case,* 405 Pa. 421, 434, 175 A. 2d 856, 863 (1961). So long as the classification is neither capricious nor arbitrary, there is no denial of the equal protection of the law. *Allied Stores of Ohio, Inc. v. Bowers,* supra at 527, 79 S. Ct. at 441; *State Bd. of Tax Comm'rs of Indiana v. Jackson,* supra at 537, 51 S. Ct. at 543; *Brown-Forman Co. v. Kentucky,* 217 U.S. 563, 573, 30 S. Ct. 578, 580 (1910).

In the past this Court has sustained the distinctive tax treatment of various types of insurance companies where the differences found to exist between them precluded the conclusion that one class was being singled out for arbitrary treatment. See *Commonwealth v. Penna. Threshermen & Farmers' Mut. Cas. Ins. Co.,* 339 Pa. 62, 14 A. 2d 295 (1940); *Commonwealth v. Girard Life Ins. Co.,* 305 Pa. 558, 158 Atl. 262 (1932); *Germania Life Ins. Co. v. Commonwealth,* 85 Pa. 513 (1877).[12] It therefore follows that for purposes of

---

[12] Cf. *Philadelphia v. Samuels,* 338 Pa. 321, 12 A. 2d 79 (1940); *Heisler v. Thomas Colliery Co.,* 274 Pa. 448, 118 Atl. 394, aff'd, 260 U.S. 245, 43 S. Ct. 83 (1922); *Knisely v. Cotterel,* 196 Pa. 614, 46 Atl. 861 (1900).

taxation all insurance companies need not be accorded identical treatment. See ibid. As this Court has pointed out in another context, the Legislature may distinguish for purposes of taxation activities which are sufficiently unique despite the fact that the subjects so taxed are but one segment of a larger class engaged in similar activity. *Turco Paint & Varnish Co. v. Kalodner,* 320 Pa. 421, 432-33, 184 Atl. 37, 43-44 (1936); see *Allied Stores of Ohio, Inc. v. Bowers,* supra at 528, 79 S. Ct. at 441; *Stebbins v. Riley,* 268 U.S. 137, 142, 45 S. Ct. 424 (1925); *American Sugar Refining Co. v. Louisiana,* 179 U.S. 89, 21 S. Ct. 43 (1900).

In the application of these general principles to the instant case, it is significant to note that the Legislature established various classifications of insurance companies for purposes unrelated to the matter of taxation in the Insurance Company Law of 1921, Act of May 17, 1921, P. L. 682, 40 P.S. §§341-991. This Act, which deals with the organization of insurance companies, provides for several distinct classes of carriers including stock life, mutual life, stock fire, stock marine, stock fire and marine, stock casualty, and mutual nonlife companies. Act of May 17, 1921, P. L. 682, §201, 40 P.S. §381. Although the creation of such classes does not of itself necessarily determine the propriety of the classification made in the instant case, as the court below correctly noted, "the very fact of the existence of . . . [such] classifications, even for the limited purpose of that Act, over so long a period of time, recognized and accepted by both the Commonwealth and the industry, . . . tends to establish that [the] classification of insurance companies, including the separate classification of life insurance com-

panies in a taxing statute, is neither specious, arbitrary, nor capricious on the part of the legislature."[13]

Life insurance, by its very nature, is basically different from other types of insurance. Whereas casualty insurance is pure risk insurance, life insurance, with the exception of term policies, provides for investment as well. See Notes, The Pennsylvania Life Insurance Exemption Statute, 22 U. Pitt. L. Rev. 757, 760 (1961). Moreover, unlike casualty insurance, life insurance is generally testamentary in nature. It is designed in many instances to provide for the creation and disposition of an insurance estate. See Lowndes, The Constitutional Basis for Taxing Life Insurance Under the Federal Estate Tax, 17 U. Pitt. L. Rev. 346, 349 (1956).

Aside from whatever significance may be attributed to these and other differences between life and nonlife insurance, they are sufficient to justify and have in the past prompted distinctive legislative treatment for purposes other than taxation. Life insurance companies are permitted to write health and accident policies, as does in fact appellant, whereas life insurance may be sold only by those companies formed for the express purpose of so doing.[14] Moreover, the Legislature has imposed varying capitalization requirements for life and nonlife insurance companies depending upon the type and combination of coverage provided. See Act of May 17, 1921, P. L. 682, §206, as amended, 40 P.S. §386 (Supp. 1964). The public interest in ensuring stability and fair dealing on the part of insurance companies has prompted a high degree of governmental intervention in the insurance industry. See Kimball & Hanson, The Regulation of Specialty Poli-

---

[13] *Commonwealth v. Life Assurance Co.*, 83 Dauph. 93, 96 (1964).

[14] See Act of May 17, 1921, P. L. 682, §202, as amended, 40 P.S. §382.

cies in Life Insurance, 62 Mich. L. Rev. 167, 180-81 (1963). In the process of regulation, life insurance companies have traditionally been singled out for specialized treatment. See, e.g., Act of May 17, 1921, P. L. 789, §301, as amended, 40 P.S. §71; Act of May 17, 1921, P. L. 682, §§410-410A, as amended, 40 P.S. §§510-510.1; Act of May 17, 1921, P. L. 682, §§404-406.2, as amended, 40 P.S. §§504-506.2.

In light of these distinctions, legitimately and historically drawn, we are unable to conclude that the classification objected to is arbitrary, capricious or discriminatory. It therefore follows that the distinctive treatment accorded domestic life and nonlife insurance companies by the Act of 1961 is not violative of the equal protection and uniformity clauses of the federal or state constitutions.[15]

Appellant, however, urges that even if the overall classification is constitutionally permissible, the imposition of a tax upon the gross premiums received by domestic life insurance carriers from the sale of accident and health contracts, while premiums received by domestic nonlife carriers from the sale of identical contracts remain untaxed, results in an un-

---

[15] Appellant seeks support for its position in the decision of *Quaker City Cab Co. v. Commonwealth*, 277 U.S. 389, 48 S. Ct. 553 (1928). However, in our view, the current position of the Supreme Court of the United States is more correctly represented by the dissenting opinions of Justices BRANDEIS, HOLMES, and STONE. Id. at 555-58.

Appellant also relies upon *Reserve Life Ins. Co. v. Bowers*, 380 U.S. 258, 85 S. Ct. 951 (1965); *Wheeling Steel Corp. v. Glander*, 337 U.S. 562, 69 S. Ct. 1291 (1949); and *Hartford Steam Boiler Inspection & Ins. Co. v. Harrison*, 301 U.S. 459, 57 S. Ct. 838 (1937). In each of these decisions, the classification objected to disadvantaged foreign competitors. We do not view the considerations therein involved appropriate to the instant case. See *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 530-33, 79 S. Ct. 437, 443-44 (1959) (BRENNAN, J., concurring).

constitutional discrimination and invalidates the entire tax. In the conduct of its business, appellant sells both life insurance and health and accident insurance. In 1961, it received a total of $2,261,418 in premiums, 28% of which was derived from its accident and health policies. Therefore, appellant contends, the imposition of a gross premiums tax on the proceeds derived from the sale of accident and health policies results in an unconstitutional economic discrimination invalidating the tax with respect to all of its premium income.

Assuming that appellant is placed at some disadvantage to nonlife insurance companies by reason of the taxation of its accident and health premiums, the crucial question remains whether such disadvantage is prohibited by the equal protection and uniformity clauses. For the purposes of taxation, the Act of 1961 creates a separate classification of life insurance companies which, as we have previously stated, is not proscribed by either the federal or state constitution. Under the Act, a tax is imposed upon all the premiums received by insurance companies so classified. The fact that the tax also reaches to premiums derived from accident and health insurance policies is but an incidental effect of the overall classification.

As this Court has previously held, "the power to classify . . . is not limited to cases where the commodities [classified] are unlike or . . . not competitive, but, on the contrary, may be based on other grounds and the courts cannot . . . interfere . . . where . . . 'the classification is not an arbitrary one, but one which actually exists in the business world.'" *Heisler v. Thomas Colliery Co.*, 274 Pa. 448, 463, 118 Atl. 394, 399, aff'd, 260 U.S. 245, 43 S. Ct. 83 (1922). (Citations omitted.)[16]  The Supreme Court of the

---

[16] In *Heisler v. Thomas Colliery Co.*, the classification sustained permitted distinctive tax treatment of anthracite and bituminous coal. Cf. *Commonwealth v. Penna. Threshermen & Farm-*

United States has on numerous occasions refused to invalidate a tax solely on the basis of economic disadvantage where the classification was not otherwise arbitrary. See *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 79 S. Ct. 437 (1959); *Union Bank & Trust Co. v. Phelps,* 288 U.S. 181, 53 S. Ct. 321 (1933); *State Bd. of Tax Comm'rs of Indiana v. Jackson,* 283 U.S. 527, 51 S. Ct. 540 (1931); *Stebbins v. Riley,* 268 U.S. 137, 45 S. Ct. 424 (1925); *Rast v. Van Deman & Lewis Co.,* 240 U.S. 342, 36 S. Ct. 370 (1916); *American Sugar Refining Co. v. Louisiana,* 179 U.S. 89, 21 S. Ct. 43 (1900).

In *Allied Stores of Ohio, Inc. v. Bowers,* supra, the Supreme Court of the United States sustained a tax imposed upon merchandise held in storage which exempted such merchandise if held by nonresidents. Despite the fact that this classification resulted in a tax advantage in favor of nonresidents, the Court sustained it on the theory that the state may have had other reasonable grounds for according residents and nonresidents distinctive treatment. Once having determined that a classification between residents and nonresidents could not be deemed arbitrary and unreasonable, the

ers' *Mut. Cas. Ins. Co.,* 339 Pa. 62, 14 A. 2d 295 (1940) (sustaining separate classification for purposes of taxation of mutual life or fire insurance companies and mutual casualty insurance companies); *Philadelphia v. Samuels,* 338 Pa. 321, 12 A. 2d 79 (1940) (sustaining separate classification for purposes of taxation of open and closed parking businesses); *Commonwealth v. Girard Life Ins. Co.,* 305 Pa. 558, 158 Atl. 262 (1932) (sustaining separate classification for purposes of taxation of mutual and stock life insurance companies); *Knisely v. Cotterel,* 196 Pa. 614, 46 Atl. 861 (1900) (sustaining separate classification for purposes of taxation of retailers and wholesalers); *Germania Life Ins. Co. v. Commonwealth,* 85 Pa. 513 (1877) (sustaining separate classification for purposes of taxation of foreign and domestic insurance companies). See also *State Bd. of Tax Comm'rs of Indiana v. Jackson,* 283 U.S. 527, 51 S. Ct. 540 (1931) and cases cited therein.

resulting economic disadvantage was not found to be violative of the equal protection clause. See also *Central Railroad Co. v. Pennsylvania,* 370 U.S. 607, 616, 82 S. Ct. 1297, 1304 (1962).

The conclusion that economic discrimination is not necessarily the determinative factor in testing the validity of a classification was reached by this Court in its decision in *Commonwealth v. Girard Life Ins. Co.,* 305 Pa. 558, 158 Atl. 262 (1932). In that case we sustained a classification of insurance companies for purposes of taxation based upon their corporate structure. The tax was imposed upon stock life insurance companies while mutual life insurance companies were exempted, even though both classes competed for the same business.

In sustaining the tax, this Court pointed out that the test to be applied was whether there was a reasonable distinction and difference between the classes of taxpayers sufficient to justify different tax treatment under the Act. *Commonwealth v. Girard Life Ins. Co.,* supra, at 564, 158 Atl. at 263. The fact that mutual and stock companies were in competition did not affect the result once it had been concluded that their attributes were sufficiently different to permit the Legislature to take such differences into account in fixing its tax policy. See *Commonwealth v. Girard Life Ins. Co.,* supra, at 564-65, 158 Atl. at 263-64. As the Court stated, "[Competition between the two classes of insurance companies, the taxed and nontaxed], may be admitted and not affect the validity of the tax, provided there is a substantial difference between . . . the two types of companies." *Commonwealth v. Girard Life Ins. Co.,* supra, at 565, 158 Atl. at 264. See *State Bd. of Tax Comm'rs of Indiana v. Jackson,* 283 U.S. 527, 51 S. Ct. 540 (1931); *Dufour v. Maize,* 358 Pa. 309, 56 A. 2d 675 (1948); *Philadelphia v. Samuels,* 338 Pa. 321, 12 A. 2d 79 (1940); *Heisler v. Thomas Colliery Co.,* 274

Pa. 448, 118 Atl. 394, aff'd, 260 U.S. 245, 43 S. Ct. 83 (1922); *Germania Life Ins. Co. v. Commonwealth,* 85 Pa. 513 (1877).

In the instant case, unlike *Girard,* supra, the competition between the taxed and nontaxed classes does not affect the entirety of their business but merely one segment. Having concluded that life insurance companies have attributes sufficiently different from non-life companies to justify distinctive tax treatment, and, having also concluded that a competitive disadvantage resulting from such treatment does not in and of itself violate the equal protection and uniformity clauses, we cannot conclude that any such disadvantage which may arise by reason of the Act of 1961 amounts to a constitutional violation.

Appellant relies upon *Concordia Fire Ins. Co. v. Illinois,* 292 U.S. 535, 54 S. Ct. 830 (1934), in support of its contention that the fact of competition between the taxed and nontaxed subjects invalidates the Act of 1961. In *Concordia,* supra, a tax imposed upon foreign companies which conducted both fire and casualty insurance businesses, but not upon foreign casualty companies was held invalid as applied to the proceeds from the casualty business of those companies which sold both types of insurance coverage. After careful consideration of the majority opinion in *Concordia,* we cannot conclude that the Supreme Court of the United States intended therein to overrule by implication many previous decisions and to establish a rule that any tax imposed upon one class but not upon another which may partially compete with it is arbitrary per se. Our conclusion is reinforced by the subsequent decision in *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 79 S. Ct. 437 (1959). In *Allied Stores,* the tax was sustained although the classification made therein had just such competitive implications as is presently complained of with respect to the Act of 1961. Most significantly, in

sustaining the tax, the Supreme Court relied upon numerous pre-*Concordia* decisions in which the classifications made resulted in competitive disadvantages. Among the authorities so relied upon were: *State Bd. of Tax Comm'rs of Indiana v. Jackson,* 283 U.S. 527, 51 S. Ct. 540 (1931); *Heisler v. Thomas Colliery Co.,* 260 U.S. 245, 43 S. Ct. 83 (1922); *Rast v. Van Deman & Lewis Co.,* 240 U.S. 342, 36 S. Ct. 370 (1916); *Quong Wing v. Kirkendall,* 223 U.S. 59, 32 S. Ct. 192 (1912); *American Sugar Refining Co. v. Louisiana,* 179 U.S. 89, 21 S. Ct. 43 (1900).

In *Union Bank & Trust Co. v. Phelps,* 288 U.S. 181, 53 S. Ct. 321 (1933), decided one year prior to *Concordia,* the Supreme Court of the United States directed itself squarely to the issue of whether companies which compete must be taxed alike. In sustaining a classification for purposes of taxation between building and loan associations and commercial banks, the Court stated: "Mere competition between them is not enough to show [that] two concerns must be burdened alike. The . . . Legislature reasonably might have determined that there was fair ground for distinction [between them] . . . ." *Union Bank & Trust Co. v. Phelps,* supra, at 186, 53 S. Ct. at 322. Concluding that it was unable to deem such distinction arbitrary, capricious, or wholly unreasonable, it sustained the tax. This decision has never been overruled and has been cited subsequent to the decision in *Concordia* for the proposition that mere competition does not invalidate an otherwise proper classification.[17] In light of these considerations, we are unable to conclude that *Concordia* forecloses the classification made by the Act of 1961.

Moreover, Mr. Justice CARDOZO, joined by Justices BRANDEIS and STONE, in dissenting in part in *Concor-*

---

[17] *Alabama State Federation of Labor v. McAdory,* 325 U.S. 450, 472, 65 S. Ct. 1384, 1395 (1945).

*dia,* succinctly demonstrated the weakness of the position advanced by appellant: "A tax upon the receipts of a business is not invalid as of course because some forms of business are hit and others are exempt. To bring about that result the assailant of the tax must be able to satisfy the court that the classification had its origin in nothing better than whim and fantasy, a tyrannical exercise of arbitrary power. This is the heavy burden that the appellant must sustain. Is it a whimsical and fantastic act to tax foreign fire insurance companies upon all their net receipts, including those derived from casualty premiums, when no such tax is imposed upon the receipts of insurance companies that do a casualty business only? If so, the arbitrary quality of the division must have its origin in the fact that the activities of the one class overlap to some extent the activities of the other. But plainly there is no rule that overlapping classes can never be established in the realm of taxation . . . . The recognition of such a rule means that a department store may not be taxed on the net receipts of its business unless all the many activities thus brought under a single roof are taxed in the same way when separately conducted. There must be a tax on the business of the draper, the jeweler, the shoemaker, the hatter, the carpet dealer, and what not. For the same reason, the proprietor of a retail market dealing in meats and groceries and vegetables and fruits will then escape, at least proportionately, a tax upon receipts if the statute does not cover the business of the shopkeeper who derives a modest income from the sale of peanuts and bananas. There are few taxes upon earnings that would pass so fine a sieve." *Concordia Fire Ins. Co. v. Illinois,* 292 U.S. 535, 550, 554, 54 S. Ct. 830, 836, 837-38 (1934). (Citations omitted.)

We are unable to find such whim or capricious action on the part of the Legislature in the present classi-

fication to justify the conclusion that appellant's constitutional rights have been violated. The classification in the Act of 1961 may not be deemed arbitrary or capricious if any state of facts reasonably can be conceived that would sustain it. See *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 528, 79 S. Ct. 437, 441 (1959); *State Bd. of Tax Comm'rs of Indiana v. Jackson*, 283 U.S. 527, 537, 51 S. Ct. 540, 543 (1931); *Rast v. Van Deman & Lewis Co.*, 240 U.S. 342, 357, 36 S. Ct. 370, 374 (1916); *Quong Wing v. Kirkendall*, 223 U.S. 59, 32 S. Ct. 192 (1912); *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S. Ct. 337, 340 (1911). "The state is not called upon to explain the reasons for taxing the members of one class more heavily than it does the members of . . . [another]. The burden is on the appellant who would strike the statute down, and not on the state which invokes the presumption of validity. . . ." *Concordia Fire Ins. Co. v. Illinois*, 292 U.S. 535, 550, 558, 54 S. Ct. 830, 836, 839 (1934) (CARDOZO, J., dissenting in part). (Citations omitted.) In our view, appellant has not met its burden of establishing that the classification made by the Act of 1961 clearly, palpably and plainly violates the state and federal constitutions. Cf. *Chartiers Valley Jt. Schools v. Allegheny County Bd. of School Dir's*, 418 Pa. 520, 546, 211 A. 2d 487, 501 (1965).

Appellant's final contention is that the taxing departments and the court below erred in requiring the inclusion in its taxable income of premiums received on policies sold prior to 1961. It urges that the Act of 1961 imposes a tax only upon premiums derived from insurance contracts *entered into* during the taxable year and not, as the Commonwealth contends, upon all premiums *received* during that period.

The Act imposes a tax at the rate of 2% upon "the gross premiums received from business done within . . . [the] Commonwealth during each calendar year." Act

of February 21, 1961, P. L. 33, §2, 72 P.S. §2270.2. Appellant seeks a construction which would limit the meaning of the term "business done . . . during each calendar year" to include only premiums received from sales made within that period. We conclude, as did the court below, that the language may not be given so restrictive a meaning.

The construction urged by appellant would limit the taxation to premiums received from policies initially issued during the taxable year and exclude all premiums subsequently received. We cannot read the explicit language of the Act to so insulate from taxation those remaining aspects of the overall insurance transaction. Moreover, the receipt of renewal premiums in practical effect amounts to no more than the resale of insurance coverage for an additional period of time. As the court below noted, "appellant's business is broader than just selling policies; it also extends to the collection of premiums whether in the year in which the policy is sold initially or in subsequent years on the renewal of the policy."[18] We agree and conclude therefore, that the court below correctly interpreted the language of the statute.

Judgment affirmed.

Mr. Chief Justice BELL dissents.

Mr. Justice COHEN took no part in the consideration or decision of this case.

---

[18] *Commonwealth v. Life Assurance Co.*, 83 Dauph. 93, 99 (1964). It is significant to note that the disputed language has more traditionally been deemed relevant to the issue of the territorial scope of taxation for purposes of the commerce clause, U. S. Const. art. 1, §8, cl. 3, and the due process clause, U. S. Const. amend. XIV, §1, of the federal constitution.