Frankford Trust Company *v.* Commonwealth.

Argued March 7, 1972, before President Judge Bow-
man, and Judges Crumlish, Jr., Kramer, Wilkinson,
Jr., Mencer, Rogers and Blatt.

*Frank A. Sinon,* with him *Sherill T. Moyer, Thomas
L. Wenger* and *Rhoads, Sinon & Reader,* for appellant.

*Edward T. Baker,* Deputy Attorney General, for
appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, August 1, 1972:

By this appeal Frankford Trust Company (appellant) challenges the constitutional validity of the imposition of sales and use tax liability upon state-chartered banking institutions when such liability could not be imposed upon national banks in competition with such state banks during the fiscal period in question. The appeal is before us on a stipulation of facts which we adopt as the findings of fact of the Court.

Following passage of the "Tax Act of 1963 for Education," Act of March 6, 1956, P. L. (1955) 1228, as amended by the Act of May 29, 1963, P. L. 49, 72 P.S. §3403-1 et seq., all banks irrespective of their charter origins were subjected to sales and use tax on all retail purchases of tangible personal property and services as defined by the Act. The Department of Revenue, implementing the statute, issued regulations concerning the obligation of such financial institutions to pay such taxes.

"Reg. 156. Application of Tax to Financial Institutions.

"1. Purchases by Financial Institutions

"A financial institution must pay the tax at the time of purchase of all tangible personal property to be used by it in the conduct of its business. This includes all tangible personal property furnished by the financial institution to its customers, such as passbooks, checkbooks, deposit slips, or similar items. . . ."

Appellant duly paid all sales and use taxes pursuant to Regulation 156 from July 1, 1963 to December 31, 1967 in the amount of $43,563.81. On July 9, 1968, appellant petitioned the Department of Revenue for a refund of these tax payments which petition was denied by the Sales Tax Board. Thereafter, a timely petition for review of the refund denial was filed with the Board of Finance and Revenue which subsequently entered an order refusing the requested relief. Appellant ap-

pealed the Board's ruling to the Court of Common Pleas of Dauphin County, which transferred the appeal here following the creation of the Commonwealth Court.

Appellant based its refund claim upon the fact that, in 1968, the Department of Revenue recognized that national banks were not lawfully subject to the tax or to Regulation 156 and provided for refunds to such banks of any taxes paid since 1963. This action by the department was mandated by the decision of the United State Supreme Court in *First Agricultural National Bank of Berkshire County v. State Tax Commission,* 392 U.S. 339, 20 L. Ed. 2d 1138 (1968), which concluded that states are without power to tax federally-created or national banks absent a specific grant of such taxing power from Congress. The decision effectively stripped Pennsylvania of the power to impose a sales and use tax on national banks because such taxes were not in 1968 among the class of taxes permitted to be levied by states under then-existing federal law. *See* 12 U.S.C.A. 548.

Appellant does not question the authority of the federal government to regulate national banks or to limit, under the powers conferred on it by the United States Constitution, the relationship of states to such national banks. Appellant does take issue with Pennsylvania's imposition of sales and use taxes on *state-created* banks when the state is without power to impose the same tax on national banks. The core of appellant's argument is that under considerations of equal protection in the United States Constitution and uniformity of taxation in the Pennsylvania Constitution, the Commonwealth may not legally discriminate against non-national financial institutions in terms of sales tax treatment.[1] We disagree on both counts.

---

[1] As part of the stipulation of facts, the parties note, and we take judicial notice of the fact that Congress has enacted subse-

Appellant's reading of the decision in *First Agricultural National Bank* places heavy reliance upon a dissenting opinion of Mr. Justice MARSHALL who reviews the historical characteristics of national banks as they evolved from governmental instrumentalities for the operation of the monetary and fiscal system of the nation to largely privately operated corporations incidentally chartered and regulated by the federal government. "Under any of those rubrics and applying the factors listed above—a list not intended to be exhaustive—a a national bank cannot be considered a tax-immune federal instrumentality. It is a privately owned corporation existing for the private profit of its shareholders. It performs no significant federal governmental function that is not performed equally by state-chartered banks. Government officials do not run its day-to-day operations nor does the Government have any owner-

quent legislation in the form of an amendment to 12 U.S.C.A. §548 to be effective January 1, 1972, as follows:

"5. (a) In addition to the other methods of taxation authorized by the foregoing provisions of this section and subject to the limitations and restrictions specifically set forth in such provisions, a State or political subdivision thereof may impose any tax which is imposed generally on a nondiscriminatory basis throughout the jurisdiction of such State or political subdivision (other than a tax on intangible personal property) on a national bank having its principal office within such State in the same manner and to the same extent as such tax is imposed on a bank organized and existing under the laws of such State.

"(b) Except as otherwise herein provided, the legislature of each State may impose, and may authorize any political subdivision thereof to impose, the following taxes on a national bank not having its principal office located within the jurisdiction of such State, if such taxes are imposed generally throughout such jurisdiction on a nondiscriminatory basis:

"(1) Sales taxes and use taxes complementary thereto upon purchases, sales, and use within such jurisdiction." 12 U.S.C.A. §548, as amended, December 24, 1969, Pub. L. 91-156, §1(a), 83 Stat. 434.

ship interest in a national bank." 392 U.S. at 354, 20 L. Ed. at 1148 (dissenting opinion).

Because, in their latter-day character, national banks have become the functional equivalents of state banks in terms of services offered and as depositories of federal funds, appellants would have us conclude that such telling similarities require absolute uniformity in tax treatment to comport with federal and state constitutional protections. But functional equivalency between state and national banks does not afford to state banks federal constitutional protection against other than equal state taxation of the two kinds of financial institutions. This was explicity decided by the United States Supreme Court in sustaining a state legislative classification excluding national bank shares from an ad valorem tax on state bank shares.

"Counsel for petitioner stoutly maintain [sic]: Shares of State and National banks belong to the same species of property. Not only are they essentially similar, but for many years the Revenue Statutes of Alabama have put them in the same category. Under the scheme of taxation presently existing in the State, National bank shares escape assessment while shares of State banks are subject thereto. Consequently, the latter are deprived of the equal protection of the laws guaranteed by the Fourteenth Amendment.

"A sufficient answer is that within the intendment of the Fourteenth Amendment shares of National and State banks are not essentially the same when considered in connection with taxation. Nor do they become so merely because the State has attempted to subject them to like treatment.

"The several States lack power to tax National bank shares except as expressly permitted by Congress. [Citing cases.]

"This is enough to negative the idea that shares of National and State banks are essentially the same for

purposes of taxation. And the Alabama Supreme Court has held that under her Constitution, although the legislature may have included them in the same class of taxable objects, there is permissible distinction between them.

*"To accept the doctrine that as the States can only tax a Federal instrumentality when permitted by Congress, therefore they cannot tax competitors of such instrumentalities within their general jurisdiction in some other fashion without violating the Fourteenth Amendment would be both illogical and destructive of their proper independence."* (Emphasis added.) *Union Bank and Trust Company v. R. C. Phelps,* 288 U.S. 181, 186-187, 77 L. Ed. 687, 690 (1932).

As we understand *Union Bank,* the decision did not turn on the nature of the particular state tax in issue. Rather it holds that the want of power by a state to tax a federal instrumentality does not afford to its competitor equal protection from state taxation because Congress has not authorized State taxation of the competing federal instrumentality. Similar conclusions have been reached, for example, in *Bankers Trust Company v. Department of Treasury,* 1 N.E. 2d 935 (1936); *City of Shelbyville v. Citizens Bank of Shelbyville,* 114 S.W. 2d 719 (1913); *Brophy v. Powell,* 121 P. 2d 646 (1942).

Appellant also contends that the uniformity provisions of the Pennsylvania Constitution (Article VIII, Section 1) are violated when it and other state banks are subjected to the tax in question during a period in which national banks escaped such taxation for want of power in the Commonwealth to tax national banks. The ultimate extension of this argument is, of course, that our uniformity clause will permit the taxation of state banks only to the extent that Congress authorizes the state taxation of national banks.

We do not believe and appellant has cited no contrary authority for the proposition that Article VIII, Section 1 is a limitation or restriction upon the sovereign power of the state to tax, but rather a mandate that, as to subjects within the sovereign power of the state to tax, any tax imposed shall be uniform upon the same class of subjects. Appellant would have us read into the uniformity clause a prohibition against taxation of an otherwise proper subject of state taxation because a similar competing entity is outside the power of the state to tax under our dual system of federal-state government, a proposition which we cannot accept.

But even if one assumes that the uniformity clause speaks as appellant contends it does, appellant, nevertheless, cannot prevail. Despite the fact that Congress has stripped national banks of some of the unique functions they once enjoyed before the creation of the Federal Reserve System in 1913,[2] and before subsequent restrictions on their powers in the 1930's to stabilize the national monetary system, they still retain that most important emblem of uniqueness—that fact that the United States Congress controls their creation and existence. In recognition of this distinction, it is our opinion that the legislature could properly distinguish between state and national banks and in doing so created a constitutionally acceptable classification.[3]

---

[2] 12 U.S.C.A. §§221 et seq.

[3] In *Heisler, Appellant v. Thomas Colliery Co., et al.,* 274 Pa. 448, 118 A. 394, aff'd 260 U.S. 245, 43 S. Ct. 83 (1922), a distinctive tax treatment of anthracite and bituminous coal was sustained. *See also:* "Commonwealth v. Penna. Threshermen & Farmers' Mut. Cas. Ins. Co., 339 Pa. 62, 14 A. 2d 295 (1940) (sustaining separate classification for purposes of taxation of mutual life or fire insurance companies and mutual casualty insurance companies); Philadelphia v. Samuels, 338 Pa. 321, 12 A. 2d 79 (1940) (sustaining separate classification for purposes of taxation of open and closed

Furthermore, economic disadvantage falling upon state banks as a result of freedom from such taxation of competing national banks during the fiscal period in question will not alone create unlawful discrimination. As the United States Supreme Court said in the *Union Bank* case:

"We cannot say that the State Legislature exceeded its power to make reasonable classification when it directed that moneyed capital or the property and shares of building and loan associations, industrial banks, mortgage companies, etc., should be exempt from ad valorem taxation or taxed on a different basis from the one prescribed for banks accepting deposits and doing a general commercial business notwithstanding actual competition between them.

"Mere competition between them is not enough to show two concerns must be burdened alike. The State Legislature reasonably might have determined that there was fair ground for distinction; and upon the record we may not hold that its action was arbitrary, capricious or wholly unreasonable." 288 U.S. at 185-186, 77 L. Ed. at 689.

Our Supreme Court has recently restated a similar principle for measuring the constitutional reasonable-

---

parking businesses) ; Commonwealth v. Girard Life Ins. Co., 305 Pa. 558, 158 Atl. 262 (1932) (sustaining separate classification for purposes of taxation of mutual and stock life insurance companies) ; Knisely v. Cotterel, 196 Pa. 614, 46 Atl. 861 (1900) (sustaining separate classification for purposes of taxation of retailers and wholesalers) ; Germania Life Ins. Co. v. Commonwealth, 85 Pa. 513 (1877) (sustaining separate classification for purposes of taxation of foreign and domestic insurance companies)." *Commonwealth v. Life Assurance Company of Pennsylvania*, 419 Pa. 370, 383-84 n. 16, 214 A. 2d 209, 218 n. 16 (1965) ; *Heller, et al. v. Depuy, et al.*, 2 Pa. Commonwealth Ct. 196, 277 A. 2d 849 (1971), sustaining a state real estate tax upon certain public utilities as meeting uniformity requirements.

ness of classification between subjects to be taxed and those not to be taxed:

"The conclusion that economic discrimination is not necessarily the determinative factor in testing the validity of a classification was reached by this Court in its decision in Commonwealth v. Girard Life Ins. Co., 305 Pa. 558, 158 Atl. 262 (1932). In that case we sustained a classification of insurance companies for purposes of taxation based upon their corporate structure. The tax was imposed upon stock life insurance companies while mutual life insurance companies were exempted, even though both classes competed for the same business.

"In sustaining the tax, this Court pointed out that the test to be applied was whether there was a reasonable distinction and difference between the classes of taxpayers sufficient to justify different tax treatment under the Act." *Commonwealth v. Life Assurance Company of Pennsylvania, Appellant,* 419 Pa. 370, 385, 214 A. 2d 209, 218 (1965).

Citing the *Life Assurance* decision, our Supreme Court said later of the non-uniform taxation of gas and electric municipal utilities: "Even admitting, however, that these two utilities perform substantially similar functions and are frequently in competition, this is not enough to show that the classification for taxing purposes is unreasonable. We realize that gas and electric companies (along with coal and oil companies) compete, for example, in the area of space heating. But, as this Court said in Life Assurance, supra, 'the Legislature may distinguish for purposes of taxation activities which are sufficiently unique despite the fact that the subjects so taxed are but one segment of a larger class engaged in similar activity. [Citing cases.]' 419 Pa. at 380, 214 A. 2d at 216. See also Heisler v. Thomas Colliery Co., 274 Pa. 448, 118 Atl. 394, affirmed, 260 U.S. 245, 43 S. Ct. 83 (1922)." *Philadelphia, Appellant v. Depuy,* 431 Pa. 276, 279-80, 244 A. 2d 741, 743 (1968).

Even absent the directive of the United States Supreme Court in *First Agricultural National Bank of Berkshire County v. State Tax Commission, supra,* the Legislature could constitutionally differentiate between state and national banks.

## Conclusions of Law

1. The exclusion of national banks from taxation under the "Tax Act of 1963 for Education," 72 P.S. §§3403-1 et seq., did not produce an unreasonable classification against state banks under the equal protection clause of the United States Constitution and the Pennsylvania Constitution for the period July 1, 1963 to December 31, 1967.

2. Regulation 156 of the Department of Revenue as administered for the fiscal period in question was a nondiscriminatory application of the "Tax Act of 1963 for Education," 72 P.S. §§3403-1 et seq.

3. Frankford Trust Company as a state bank incorporated under the laws of the Commonwealth was subject to the provisions of Regulation 156 for the fiscal period in question.

4. The appeal of Frankford Trust Company should be dismissed and the decision of the Board of Finance and Revenue sustained.

## Order

Now, August 1, 1972, the appeal of Frankford Trust Company from the decision of the Board of Finance, dated January 29, 1969, refusing a petition for review of appellant's tax liability under the "Tax Act of 1963 for Education," 12 P.S. §§3403-1 et seq., for the fiscal period from July 1, 1963 to December 31, 1967, in the amount of $43,563.81, is hereby dismissed, and the Chief Clerk is directed to enter judgment in favor of the Commonwealth unless exceptions are filed within thirty (30) days of the filing of this Order.