Philadelphia Life Insurance Co., Appellant, *v.* Commonwealth.

Argued May 23, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*David F. Maxwell,* with him *Herbert A. Fogel, Joseph M. Hartley, Jr.,* and *Obermayer, Rebmann, Maxwell & Hippel,* for appellant.

*Eugene J. Anastasio,* Deputy Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, October 4, 1973:

The narrow issue presented by this appeal is whether the Gross Premiums Tax Act of 1961[1] is unconstitutional when applied to renewal premiums received by insurance companies from non-participating life insurance

---

[1] "Every insurance company, as herein defined, transacting business in the Commonwealth of Pennsylvania, shall pay to the Department, in addition to any other taxes for which it may be liable, a tax at the rate of two percentum (2%) of the gross premiums received from business done within this Commonwealth during each calendar year." Act of February 21, 1961, P. L. 33, §2; repealed by Act of March 4, 1971, P. L. 6, No. 2, Art. IX, §905.

policies[2] written prior to January 1, 1961, the effective date of the tax.

The appellant, Philadelphia Life Insurance Company, is a Pennsylvania stock life insurance company which receives 80% of its revenues from non-participating policies. On June 21, 1961, appellant instituted this equity action seeking to restrain the collection of the tax.[3] After a trial, the lower court entered a Decree Nisi denying the requested relief and appellant filed exceptions which were overruled by the Court en Banc. This appeal followed.

Appellant contends that the Gross Premiums Receipt Tax, insofar as it is applied to non-participating policies written prior to 1961, is unconstitutionally retroactive.[4]

---

[2] A non-participating policy is one written on a fixed or guaranteed premium basis without subsequent dividends. The nature of these policies is such that increased costs to the insurer cannot be passed on to the policyholder.

[3] Appellant's complaint raised broad challenges to the entire tax. The trial of its case was delayed to obtain appellate review of procedural objections (*Philadelphia Life Ins. Co. v. Commonwealth*, 410 Pa. 571, 190 A. 2d 111 (1963), and the parties agreed to delay their trial further pending the outcome of an action instituted by the *Philadelphia Life Assurance Co.* which raised similar issues. Appellant participated as amicus curiae at all stages of the *Life Assurance* case, in which this Court affirmed the lower court's denial of the requested relief. *Commonwealth v. Philadelphia Life Assurance Co.*, 419 Pa. 370, 214 A. 2d 209 (1965). In that action, we disposed of all of appellant's objections to the tax except the narrow issue presented here. See 419 Pa. 389-90.

[4] Appellant relies primarily upon the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution, and a similar principle embodied in Article I, Section 9 of the Pennsylvania Constitution. While he makes a brief reference to the "Uniformity Clause" of the Pennsylvania Constitution, Article IX, Section 1, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, he has not made any attempt to show that the burdens of this tax are imposed selectively and in an arbitrary manner. See generally, *Amidon v. Kane*, 444 Pa. 38, 279 A. 2d 53 (1971).

It is well established that: "An Act of Congress or an Act of the legislature of Pennsylvania which imposes a retroactive tax is not unconstitutional per se merely because it is retroactive in its language or in its operation: Billings v. United States, 232 U.S. 261, 282; Milliken v. United States, 283 U.S. 15, 21; Welch v. Henry, 305 U.S. 134; Shirks Motor Express Corp. v. Messner, 375 Pa. 450, 462, 100 A. 2d 913." *Commonwealth v. Budd Co.*, 379 Pa. 159, 170-1, 108 A. 2d 563 (1954). See also, *Commonwealth v. Rockwell Mfg. Co.*, 392 Pa. 339, 140 A. 2d 854 (1958). However, after making the above statement in *Budd,* this Court went on to note that there must be some limit to the legislature's ability to reach events buried in the distant past.

"It is obvious, however, that there must be some limitation on the right of a legislative body to pass laws imposing taxes retroactively for otherwise a legislature could constitutionally impose new or increased taxes retroactively for a period of 25 or 50 years which would be so onerous or confiscatory and unjust as to bankrupt the individuals or corporations thus taxed. This was recognized in Welch v. Henry, 305 U.S., supra, where the Court sustained an Act of Wisconsin passed in 1935 which for the first time taxed corporate dividends received by taxpayer in the year 1933, a return of which was not due, however, under Wisconsin law, until March 15, 1934. . . .

"Following Welch v. Henry, we decide that a tax may not be retroactively applied beyond the year of the general legislative session *immediately preceding that of its enactment;* to provide otherwise constitutes a denial of due process. For this additional reason the Act of 1947 as applied in this case to 1944 corporate net income denies to each of the appellants Due Process and is void." 379 Pa. at 171-72.

The Gross Premiums Tax Act was passed in February of 1961, and was made applicable only to premiums

received after January 1, 1961. On its face, the retroactive effect of the tax covers a period of one month, well within the bounds established in *Budd*.

Appellant contends however that in practice this tax reaches contracts written many years prior to 1961 and it therefore is effectively retroactive beyond the limits established in *Budd*. Appellant relies upon two facts stipulated in the record: (1) That premiums received from non-participating policies written prior to 1961 were fixed by contract; and (2) That there is no method by which the cost of this tax can be passed on to policyholders. We do not find the tax to be retroactive in the manner suggested by the appellant.

Two important policies dictate against invalidating tax legislation on the grounds of retroactivity. The first is the paramount state interest in obtaining adequate revenues which lends every tax statute a presumption of validity. See generally, *Commonwealth v. Phila. Life Assurance Co.*, 419 Pa. 370, 376-77, 214 A. 2d 209, 214 (1965). The second is that taxation is not in the nature of a penalty or a contractual obligation, but rather a means of apportioning the costs of government among those who benefit from it. See, *Welch v. Henry*, 305 U.S. 134, 146 (1938); *Philip Wagner Inc. v. Leser*, 239 U.S. 207, 216-17 (1915).

Only serious countervailing prejudice will override these significant policy considerations. For example, where at the time of the transaction in dispute the taxpayer could not reasonably have foreseen that a tax would be imposed, and, where he would have been likely to alter his conduct to avoid the tax had he foreseen it, the United States Supreme Court has granted relief based on the Due Process Clauses. See, *e.g.*, *Untermyer v. Anderson*, 276 U.S. 440 (1928); *Blodgett v. Holden*, 275 U.S. 142 (1927); modified, 276 U.S. 594 (1928). Cf., *Milliken v. United States*, 283 U.S. 15, 21 (1931); *Reinecke v. Northern Trust Co.*, 278 U.S. 339

(1929). Such a rationale is particularly applicable to gift and estate taxes because the donor's intent is frequently guided by tax considerations. However, the Supreme Court has consistently refused to invalidate an income tax on the grounds of retroactivity.[5] It is thought that the taxpayer would have elected to receive the income even if he had known of the subsequent tax, and that he in no way relied upon the non-taxability of the income. See, *e.g., Welch v. Henry*, 305 U.S. 134 (1938); *United States v. Hudson*, 299 U.S. 498 (1937); *Lichter v. United States*, 334 U.S. 742 (1948). The prejudice to the taxpayer in income tax cases is not therefore considered significant.

In the instant case, we grant that the appellant may not have been able to foresee the imposition of this tax. That fact alone however does not warrant relief. A tax is not considered retroactive merely because its application depends upon events which pre-date the tax. *United States v. Manufacturers National Bank*, 363 U.S. 194, 200 (1960). As with other corporate income taxes, we will not assume that the taxpayer would not have chosen to enter into the contracts producing the income had it been aware of the tax.

"The imposition of a new tax, or an increase in the rate of an old one, is one of the usual hazards of business enterprise: seldom, if ever does such an event impair the obligation of a pre-existing contract." *McShain v. District of Columbia*, 205 F. 2d 882, 833 (1953); cf. *Stadtfeld Estate*, 359 Pa. 147, 154 (1948); *Commonwealth v. New York, L. E. & W. R. Railroad Co.*, 150 Pa.

---

[5] See, Griswold, Cases on Federal Taxation, 124 (4th ed. 1955). The Court's reluctance to invalidate income taxes in this area led one commentator to observe that "'arbitrary retroactivity' may continue . . . to rear its head in tax briefs, but for practical purposes, in this field, it is . . . dead. . . ." Ballard, Retroactive Federal Taxation, 48 Harv. L. Rev. 592 (1935).

234, 24 A. 609 (1892) ; *Maltby v. Reading and Columbia Railroad Co.,* 52 Pa. 140 (1866).

In judging the impact of this tax, it is significant to note that, with respect to the participating policies written by this company, appellant could have passed the tax onto policyholders by way of decreased dividends but elected not to do so. The fact that appellant opted against such an alternative is a strong indication of its ability to absorb this tax without significant detriment.

In contrast, there is a significant state interest in reaching the premiums at issue in this case. Legislatures have long used gross receipts as a measure of an insurance company's ability to pay tax and they have imposed taxes on those receipts accordingly. To accept appellant's position would limit the legislature's ability to tax premiums to policies written after the enactment of the tax. By logical extension, all income generated from employment or any other types of contracts written prior to the adoption of a tax would be exempt from that tax. Such a rule would cripple the legislature's ability to raise revenues. Due process does not require such a result.

The decree of the court below is affirmed, each party to pay own costs.

Mr. Justice EAGEN and Mr. Justice O'BRIEN concur in the result.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I concur in the judgment of the Court. The disposition of appellant's claim is governed by this Court's decision in *Commonwealth v. Phila. Life Assurance Co.,* 419 Pa. 370, 214 A. 2d 209 (1965), appeal dismissed for want of a substantial federal question, 384 U.S. 268, 86 S. Ct. 1476 (1966).

*Life Assurance,* like the instant case, involved a constitutional attack on the very statute at issue here, the

act of February 21, 1961.[1] As part of that challenge this Court construed the Act of 1961. In doing so we stated: "[T]he receipt of renewal premiums in practical effect amounts to no more than the resale of insurance coverage for an additional period of time. As the court below noted, '[an insurance company's] business is broader than just selling policies; it also extends to the collection of premiums whether in the year in which the policy is sold initially or in subsequent years on the renewal of the policy.'" Id. at 390, 214 A. 2d 221 (footnote omitted). The plain meaning of our holding in *Life Assurance* is that the Act of 1961 does not impose a retroactive tax. Although it is true that the contracts in question were written before 1961, it is the receipt of revenue during each tax year, not the writing of contracts, that produces the taxable event.

In order for a taxpayer to demonstrate that a tax is unconstitutionally retroactive, he must first prove that it is in fact retroactive. Appellant cannot prevail on this determinative issue, because this Court has already decided it adversely to appellant.

Since *Life Assurance* controls the outcome of this litigation, it is not necessary here to consider whether

[1] Act of February 21, 1961, P. L. 33, §§1-10, as amended, Act of March 4, 1971, P. L. 6, art. IX, §§901-06, 72 P.S. §§7901-06 (Supp. 1973).

The Act of 1961 by taxing gross receipts imposed a tax on the privilege of doing insurance business within the Commonwealth. The tax was not predicated on the taxpayer's earnings or ability to pay and was due regardless of whether the taxpayer's business generated income or profits during the tax year. This is apparent from the specific language of the statute. Id. §2. See *F. J. Busse Co. v. Pittsburgh*, 443 Pa. 349, 353 n.1, 279 A. 2d 14, 16 n.1 (1971) ; *Commonwealth v. Kirby Estates, Inc.*, 432 Pa. 103, 108, 246 A. 2d 120, 122 (1968) (ROBERTS, J., dissenting) ; *Commonwealth v. Columbia Gas & Elec. Corp.*, 336 Pa. 209, 217-22, 8 A. 2d 404, 410-12 (1939) ; *Insurance Co. of North America v. Commonwealth*, 87 Pa. 173, 182 (1878). Cf. *Penn Mutual Indemnity Co. v. Commissioner*, 277 F. 2d 16 (3d Cir. 1960).

appellant's participation as amicus curiae at the trial and appellate levels in *Life Assurance*[2] is sufficient to bring into play the doctrine of collateral estoppel.

Mr. Justice MANDERINO joins in this concurring opinion.

---

[2] In this earlier litigation challenging the constitutionality of the Act of 1961, appellant filed a brief as amicus curiae in and argued before both the Dauphin County Court sitting as the Commonwealth Court and this Court. See *Commonwealth v. Phila. Life Assurance Co.*, 419 Pa. 370, 214 A. 2d 209 (1965), aff'g 35 Pa. D. & C. 2d 390 (C. P. Dauphin County 1964).